UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| YI-CHIEH CHENG,<br>*on behalf of himself and all others similarly situated,*<br><br>*Plaintiff,*<br><br>v.<br><br>NEW VIDEO CHANNEL AMERICA, LLC d/b/a BBC America,<br><br>*Defendant.* | Case No.<br><br>**Judge**:<br><br>**JURY TRIAL REQUESTED** |

### CLASS ACTION COMPLAINT

Plaintiff Yi-Chieh Cheng, on behalf of himself and all others similarly situated, files this Class Action Complaint against Defendant New Video Channel America, LLC d/b/a/ BBC America ("BBC America" or "Defendant") for violations of the federal Video Privacy Protection Act, 18 U.S.C. § 2710 ("VPPA").

### NATURE OF THE ACTION

1. This is a privacy class action seeking liquidated damages, injunctive relief, and reasonable attorney's fees and costs pursuant to the VPPA.

2. The VPPA prohibits "video tape service providers," like BBC America from knowingly disclosing consumers' personally identifiable information, including "information that which identifies a person as having requested or obtained specific video materials or service from a video tape provider," without express consent in a stand-alone consent form.

3. Defendant develops, owns and operates the cable subscription service, BBC America, which features many series and films and provides its subscribers with access to pre-recorded programming and videos.[1]

---

[1] See https://www.bbcamerica.com/ (Last viewed June 28, 2024).

4. Plaintiff and Class Members subscribe to BBC America either through their cable providers, such as Xfinity, Optimum, and Spectrum cable services, or through the streaming service AMC+.[2]

5. Despite its clear legal obligations under the VPPA, Defendant knowingly discloses its subscribers' personally identifiable information or Facebook ID and a record of every video they view (collectively, "Personal Viewing Information") to a third party, Meta Platforms Inc. ("Meta") (formerly known as Facebook) ("Meta" or "Facebook"). Defendant tracks, collects and discloses its subscribers' information through the use of a Meta Pixel and/or other tracking tools.

6. Defendant tracks, collects and discloses its subscribers' information without their knowledge or consent. The Meta Pixel and/or other tracking tools work in the background of Defendant's website to track, collect and disclose subscribers' information in a way that is not visible to subscribers. And, Defendant does not inform its subscribers that their information is being tracked, collected and disclosed.

7. Plaintiff brings this class action on behalf of himself, and all others similarly situated to recover statutory liquidated damages against BBC America for its unlawful conduct.

**PARTIES**

8. Plaintiff Yi-Chieh Cheng is an adult citizen of the State of California and is domiciled in California. In or about 2023, Plaintiff signed up for the BBC America service, which BBC America states provides access to "a hub of innovative, culturally contagious programming"[3] by paying BBC America's subscription fees to Direct TV and Hulu. Since he first subscribed to BBC America's services, Plaintiff has viewed, and continues to view, prerecorded videos on BBC America's website— https://www.bbcamerica.com. Throughout the time that Plaintiff has subscribed to Defendant's services and watched videos on Defendant's website, he has owned a Facebook account and has used this account during the same period.

9. Defendant New Video Channel America, LLC d/b/a BBC America is a Delaware Limited Liability Company, with its principal address at 11 Penn Plaza, NY 10001.

---

[2] *See* https://support.bbcamerica.com/en/support/solutions/articles/11000110073-how-can-i-watch-bbc-america-
[3] *See* AMC Networks, Inc.'s SEC 10-K for Fiscal Year ending in December 31, 2023, p.9.

**JURISDICTION AND VENUE**

10. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 over the claims that arise under the Video Privacy Protection Act, 18 U.S.C. § 2710.

11. This Court also has jurisdiction under 28 U.S.C. § 1332(d) because this action is a class action in which the aggregate amount in controversy for the proposed Class (defined below) exceeds $5,000,000, and at least one member of the Class is a citizen of a state different from that of Defendant.

12. Venue is appropriate in this District pursuant to 28 U.S.C. § 1391 because Defendant's principal place of business is in this District and Defendant does business in this District. Venue is also proper because a substantial part of the events or omissions giving rise to the claim occurred in or emanated from this District.

**THE VPPA**

13. The origins of the VPPA began with President Reagan's nomination of Judge Robert Bork to the United States Supreme Court. During the confirmation process, a video rental store disclosed the nominee's rental history. Congress responded by passing the VPPA, with an eye on the digital future. As Senator Patrick Leahy, who introduced the Act, explained:

> It is nobody's business what Oliver North or Robert Bork or Griffin Bell or Pat Leahy watch on television or read or think about when they are home. In an area of interactive television cables, the growth of computer checking and check-out counters, of security systems and telephones, all lodged together in computers, it would be relatively easy at some point to give a profile of a person and tell what they buy in a store, what kind of food they like, what sort of television programs they watch, who are some of the people they telephone. I think this is wrong.

S. Rep. 100-599, at 5-6 (internal ellipses and brackets omitted).

14. The United States Congress passed the VPPA in 1988, seeking to confer onto consumers the power to "maintain control over personal information divulged and generated in exchange for receiving services from video tape providers." S. Rep. No. 100-599, at 8. "The Act reflects the central principle of the Privacy Act of 1974: that information collected for one purpose may not be used for a different purpose without the individual's consent." *Id.*

15. The VPPA prohibits "[a] video tape service provider who knowingly discloses, to any person, personally identifiable information concerning any consumer of such provider." 18

U.S.C. § 2710(b)(1). The VPPA defines personally identifiable information as "information which identifies a person as having requested or obtained specific video materials or services from a video service provider." 18 U.S.C. § 2710(a)(3). A video tape provider is "any person, engaged in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials." 18 U.S.C. § 2710(a)(4).

## FACTUAL BACKGROUND

### I. BBC America Has Provided Video Tape Services Throughout the Class Period

16. BBC America through its website, www.bbcamerica.com, operates a pre-recorded video subscription service by which its user can watch prerecorded videos on their connected devices.[4]

17. Individuals must either subscribe to BBC America through their cable providers or AMC+ in order to watch prerecorded videos on www.bbcamerica.com.

18. Once subscribed to BBC America, users may select from among thousands of pre-recorded videos to watch on their devices.

19. Thus, Defendant is a "video tape service provider" within the meaning of 18 U.S.C. § 2710(a)(4) because it is engaged in the business of "rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials."

20. And, Plaintiff and other Class Members are "consumers" within the meaning of 18 U.S.C. § 2710(a)(1) because they are "subscriber[s] of goods or services from a video tape service provider."

21. Defendant is also a "person providing video recording sales or rental services" within the meaning of Cal. Civ. Code § 1799.3(a), because it is engaged in the business of "providing video recording sales or rental services."

22. And, Plaintiff and other Class Members are "person[s] who is the subject of the records" under Cal. Civ. Code § 1799.3(c).

---

[4] *See* https://www.bbcamerica.com/ (Last visited June 28, 2024).

II. **BBC America Unlawfully And Knowingly Disclosed And/Or Released Plaintiff's And Class Members' Personally Identifiable Information To Meta.**

23. On information and belief, Defendant first implemented the Meta Pixel on its website beginning in or about May 2019 and continuing to the present. During the Class Period, Defendant has released or disclosed Plaintiff's and other Class Members' "personal information or the contents of any record, including [their] sales or rental information," including "information which identifies a person as having requested or obtained specific video materials or services" to Meta using Meta's tracking pixels.

24. As the Federal Trade Commission has stated, companies who use pixels, like the ones used by Defendant in this case, have numerous options to monetize their use of these pixels.

25. According to the FTC: "Pixel tracking can be monetized in several ways. One way to monetize pixel tracking is for companies to use the tracking data collected to improve the company's own marketing campaigns. The data can be used to target more specific audiences with ads and other marketing messages. Another is that companies can monetize the data collected by further optimizing their own ad targeting systems and charging other companies to use its advertising offerings."[5]

### A. The Meta Tracking Pixel

26. Meta, which operates Facebook and was called Facebook, Inc. until changing its name in January 2022, is the world's largest social media company. Meta reported having 2.04 billion daily active users as of March 2023,[6] and reported $116.61 billion in revenue in fiscal year 2022.[7]

27. Meta's current revenue, as well as its revenue when the company was called Facebook, Inc., has been derived almost entirely from selling targeted advertising to Facebook

---

[5] *See* https://www.ftc.gov/policy/advocacy-research/tech-at-ftc/2023/03/lurking-beneath-surface-hidden-impacts-pixel-tracking (citing M. Eddy. "How Companies Turn Your Data Into Money." PC Mag. October 10, 2018. https://www.pcmag.com/news/how-companies-turn-your-data-into-money) (last visited June 13, 2023).

[6] Meta Reports First Quarter 2023 Results, https://s21.q4cdn.com/399680738/files/doc_news/Meta-Reports-First-Quarter-2023-Results-2023.pdf

[7] Meta Reports Fourth Quarter and Full Year 2022 Results, 2/1/23, https://s21.q4cdn.com/399680738/files/doc_financials/2022/q4/Meta-12.31.2022-Exhibit-99.1-FINAL.pdf (last visited 6/6/2023).

users, users of its family of apps including Instagram, and internet users on non-Facebook sites that integrate Meta marketing source code on their websites. Meta reported in Fiscal Year 2022 that its revenue from advertising was over $113 billion and Meta stated that it "generated substantially all of our revenue from selling advertising placements on our family of apps to marketers."[8] In its 10k filing covering the fiscal year 2018, Facebook similarly admitted that, "We generate substantially all of our revenue from selling advertising placements to marketers."[9]

28.  Facebook describes itself as a "real identity platform,"[10] meaning users are allowed only one account and must share "the name they go by in everyday life."[11]  Therefore, when users create an account, they must provide their first and last name, along with their birthday and gender.[12]

29.  Facebook sells advertising space by highlighting its ability to target users.[13] Facebook can target users so effectively because it surveils user activity both on and off its site.[14] This allows Facebook to make inferences about users beyond what they explicitly disclose, like their "interests," "behavior," and "Connections".[15] Facebook complies this information into a generalized dataset called "Core Audiences", which advertisers use to apply highly specific filters and parameters for their targeted advertisements.[16]

30.  Advertisers can also build "Custom Audiences."[17] Custom Audiences enable advertisers to reach "people who have already shown interest in [their] business, whether they're

---

[8] Meta, SEC 10k filing for the Fiscal Year Ending Dec. 31, 2022, https://www.sec.gov/Archives/edgar/data/1326801/000132680123000013/meta-20221231.htm (last visited June 19, 2022).
[9] Facebook, SEC 10k filing for the Fiscal Year Ending Dec. 31, 2018. https://www.sec.gov/Archives/edgar/data/1326801/000132680119000009/fb-12312018x10k.htm.
[10] Sam Schechner and Jeff Horwitz, *How Many Users Does Facebook Have? The Company Struggles to Figure It Out*, WALL. ST. J. (Oct. 21, 2021).
[11] FACEBOOK, COMMUNITY STANDARDS, PART IV INTEGRITY AND AUTHENTICITY, https://www.facebook.com/communitystandards/integrity_authenticity.
[12] FACEBOOK, SIGN-UP, http://www.facebook.com/
[13] FACEBOOK, WHY ADVERTISE ON FACEBOOK, https://www.facebook.com/business/help/205029060038706.
[14] FACEBOOK, ABOUT FACEBOOK PIXEL, https://www.facebook.com/business/help/742478679120153?id=1205376682832142.
[15] FACEBOOK, AD TARGETING: HELP YOUR ADS FIND THE PEOPLE WHO WILL LOVE YOUR BUSINESS, https://www.facebook.com/business/ads/ad-targeting.
[16] FACEBOOK, EASIER, MORE EFFECTIVE WAYS TO REACH THE RIGHT PEOPLE ON FACEBOOK, https://www.facebook.com/business/news/Core-Audiences.
[17] FACEBOOK, ABOUT CUSTOM AUDIENCES, https://www.facebook.com/business/help/744354708981227?id=2469097953376494

loyal customers or people who have visited [their] website."[18] Advertisers can use a Custom Audience to target existing customers directly, or they can use it to build a "Lookalike Audiences," which "leverages information such as demographics, interests, and behavior from your source audience to find new people who share similar qualities."[19] Unlike Core Audiences, Custom Audiences require an advertiser to supply the underlying data to Facebook. They can do so through two mechanisms: by manually uploading contact information for customers, or by utilizing Facebook's "Business Tools," which collect and transmit the data automatically.[20] One such Business Tool is the Meta Tracking Pixel.

31.   The Meta Tracking Pixel is a piece of code that advertisers, like Defendant, can integrate into their website. Once activated, the Meta Tracking Pixel "tracks the people and type of actions they take."[21] When the Meta Pixel captures an action, it sends a record to Facebook. Once this record is received, Facebook processes it, analyzes it, and assimilates it into datasets like the Core Audiences and Custom Audiences.

32.   Advertisers control what actions—or, as Facebook calls it, "events"—the Meta Tracking Pixel will collect along with what pages a visitor views and what buttons a visitor clicks.[22] Advertisers can also configure the Meta Tracking Pixel to track other events. Meta offers a menu of "standard events" from which advertisers can choose, including what content a visitor views or purchases.[23] An advertiser can also create their own tracking parameters by building a "custom event."[24]

---

[18] FACEBOOK, ABOUT EVENTS CUSTOM AUDIENCE, https://www.facebook.com/business/help/366151833804507?id=300360584271273.
[19] FACEBOOK, ABOUT LOOKALIKE AUDIENCES, https://www.facebook.com/business/help/164749007013531?id=401668390442328.
[20] FACEBOOK, CREATE A CUSTOMER LIST CUSTOM AUDIENCE, https://www.facebook.com/business/help/170456843145568?id=2469097953376494.
[21] FACEBOOK, RETARGETING, https://www.facebook.com/business/goals/retargeting.
[22] See FACEBOOK, FACEBOOK PIXEL, ACCURATE EVENT TRACKING, ADVANCED, https://developers.facebook.com/docs/facebook-pixel/advanced/; see also FACEBOOK, BEST PRACTICES FOR FACEBOOK PIXEL SETUP, https://www.facebook.com/business/help/218844828315224?id=1205376682832142.
[23] FACEBOOK, SPECIFICATIONS FOR FACEBOOK PIXEL STANDARD EVENTS, https://www.facebook.com/business/help/402791146561655?id=1205376682832142.
[24] FACEBOOK, ABOUT STANDARD AND CUSTOM WEBSITE EVENTS, https://www.facebook.com/business/help/964258670337005?id=1205376682832142.

33. Advertisers control how the Meta Tracking Pixel identifies visitors. The Meta Tracking Pixel is configured to automatically collect "HTTP Headers" and "Pixel-specific Data."[25] Http Headers collect "IP Addresses, information about web browser, page location, document, [referrer] and persons using the website."[26] Pixel-specific Data includes "the Pixel ID and cookie."[27]

34. FTC Commissioner Rohit Chopra addressed the harms that can be caused by sharing information with Facebook when he stated in 2019, "Because behavioral advertising allows advertisers to use mass surveillance as a means to their undisclosed and potentially nefarious ends, Facebook users are exposed to propaganda, manipulation, discrimination, and other harms. . . . Facebook's massive, private, and generally unsupervised network of advertisers has virtually free rein to microtarget its ads based on every aspect of a user's profile and activity. The company's detailed dossiers of private information includes things like a user's location and personal connections, but it also includes the history of everything a user has ever done wherever Facebook is embedded in the digital world."[28]

### B. BBC America Knowingly Sends Plaintiff's and Other Class Members' Personal Viewing Information (PVI) to Meta

35. Starting on or about May 2019 and continuing to the present, Defendant embedded and/or allowed to be embedded the Meta Pixel on its website—www.bbcamerica.com—and transmitted Plaintiff's and Class Members' Personal Viewing Information, including their personal identifiers, without their consent, to meta in accordance with the Meta Pixel's configuration.

36. When Plaintiff or another Class Member visited www.bbcamerica.com, the Meta Pixel automatically caused the Plaintiff's or the Class Members' personal identifiers, including the c_user, _fr, _and datr cookies, to be transmitted to Meta, attached to the fact that the Plaintiff or the

---

[25] FACEBOOK, FACEBOOK PIXEL, https://developers.facebook.com/docs/facebook-pixel/.
[26] See id.
[27] See id.
[28] See Dissenting Statement of FTC Commissioner Rohit Chopra, In re Facebook, Inc., Commission File No, 1823109, July 24, 2019. https://www.ftc.gov/system/files/documents/public_statements/1536911/chopra_dissenting_statement on facebook_7-24-19.pdf.

Class Member had visited the website and the titles of the videos the Plaintiff or the Class Member viewed.

37. The cookies that were transmitted as a result of the Meta Pixels that Defendant installed on its website conveyed Plaintiff's and Class Members' Facebook IDs (through the c_user cookie), which can be used by Facebook and any ordinary person to find the user's real name, the specific and unique web browser from which the customer is sending the communication, and an encrypted combination of the information contained in those two cookies (fr cookie).

38. BBC America's hosted Meta Tracking Pixel transmits information associated with one distinct event to Facebook, as shown in Figure #1 below.[29] That event is the "PageView" i.e., information about the page viewed by a subscriber on Defendant's website.

**Figure #1**



39. When a subscriber views the prerecorded video, the PageView Event transmits the Uniform Resource Locator ("URL") accessed, which contains the title of the video, as shown in Figure #2 below:

---

[29] This data derives from a tool created and offered by Facebook.

**Figure 2**



40. A visitor who has not logged out of Facebook while watching a video on BBC America's website will transmit the c_user cookie to Facebook. The c_user cookie contains that visitor's unencrypted Facebook ID. When accessing the above video, for example, the Meta Pixel

on BBC America's website compels the visitor's browser to send multiple cookies, in addition to the c_user cookie, as shown in Figure #3 below:

**Figure #3**

| Name | Value |
|---|---|
| c_user | 10000▉ |
| datr | saFWZXu696kRJfnBDt3cUDkn |
| dpr | 1 |
| fr | 1oChSvwuAjqC1F2fR.AWX-zzNf_y7GWPk5ZOd-k4dStX0.BmTPPp... |
| ps_n | 1 |
| sb | saFWZTYcT89vhNpJu_mc48fL |
| usida | eyJ2ZXIiOjEsImlkIjoiQXNkc2QxejJjZWw3cyIsInRpbWUiOjE3MTYy... |
| xs | 9%3AdXxBtLEXwuwdrA%3A2%3A1716322265%3A-1%3A3022 |

41. A Facebook ID, along with the title of the prerecorded video watched, is PVI. Anyone can identify a Facebook profile-and all personal information publicly listed on that profile, including a person's first and last name—by appending the Facebook ID to the end of Facebook.com. For example, Meta CEO Mark Zuckerberg's Facebook ID is four and the URL "www.facebook.com/4" will take you to Mark Zuckerberg's Facebook page.

42. Accordingly, by compelling a visitor's browser to disclose the c_user cookie alongside event data for videos, BBC America knowingly discloses information sufficient for an ordinary person to identify a specific individual's video viewing behavior.

43. When a visitor's browser has recently logged out of Facebook, BBC America compels the browser to send a smaller set of cookies, as shown in Figure #4 below:

**Figure #4**

| Name | Value | Domain |
|---|---|---|
| datr | saFWZXu696kRJfnBDt3cUDkn | .facebook.... |
| dpr | 1 | .facebook.... |
| fr | 1oChSvwuAjqC1F2fR.AWXAf_f0UxX4spu62B4lh7_sZ9c.BmTPPp..... | .facebook.... |
| ps_n | 1 | .facebook.... |
| sb | saFWZTYcT89vhNpJu_mc48fL | .facebook.... |
| usida | eyJ2ZXIiOjEsImlkIjoiQXNkc2QxejJjZWw3cyIsInRpbWUiOjE3MTYy... | .facebook.... |

44. The fr cookie contains, at least, an encrypted Facebook ID and browser identifier.[30] The datr cookies also identifies a browser.[31] Facebook, at a minimum, uses the fr cookies to identify users.[32]

45. Without a corresponding Facebook ID, the fr cookie contains, at least, an abbreviated and encrypted value that identifies the browser. Facebook uses the cookie for targeted advertising.

46. Facebook, at a minimum, uses the fr and c_user cookies to link to Facebook IDs and corresponding Facebook profile.

### III. Experience of Plaintiff Yi-Chieh Cheng

47. Plaintiff created his Facebook account in or about 2010.

48. In or about 2023, Plaintiff purchased a subscription to BBC America in order to watch BBC America's programing.

49. Plaintiff frequently visits www.bbcamerica.com to, among other things, watch prerecorded videos.

50. Plaintiff's default browser is Google Chrome, and he uses Google Chrome to access www.bbcamerica.com.

51. When Plaintiff watches videos on www.bbcamerica.com, on information and belief, Defendant discloses to Meta his Facebook ID, browser identifiers, and other identifying information along with his event data, which includes the videos he views. This event data, which BBC America transmits through first-party cookies, contains the titles of prerecorded videos that Plaintiff watches.

52. Plaintiff discovered that BBC America surreptitiously collected and transmitted his personally identifiable information in or about June 24, 2024.

///

///

---

[30] DATA PROTECTION COMMISSIONER, FACEBOOK IRELAND LTD, REPORT OF RE-AUDIT (Sept. 21, 2012), http://www.europe-v-facebook.org/ODPC_Review.pdf.
[31] FACEBOOK, COOKIES & OTHER STORAGE TECHNOLOGIES, https://www.facebook.com/policy/cookies/.
[32] *Id.*

## TOLLING OF THE STATUES OF LIMITATIONS

53. Each unauthorized transmission of Plaintiff's and Class Members' Personally Identifiable Information by Defendant is a separate unlawful act that triggers anew the relevant statute of limitations.

54. Additionally, any applicable statutes of limitation have been tolled by: (1) the fraudulent concealment doctrine based on Defendant's knowing and active concealment and denial of the facts alleged herein including but not limited to its incorporation of the tracking pixels and devices; and (2) the delayed discovery doctrine, as Plaintiff and Class Members did not and could not reasonably have discovered Defendant's conduct alleged herein until shortly before the filing of this Complaint. Plaintiff and Class Members did not discover and could not reasonably have discovered that Defendant was disclosing and releasing their Personal Viewing Information in the ways set forth in this Complaint until shortly before this lawsuit was filed in consultation with counsel.

55. The Meta Pixel, and other tracking tools on BBC America's website, were and remain entirely invisible to a website visitor.

56. Through no fault of their own or lack of diligence, Plaintiff and Class Members were deceived and could not reasonably discover Defendant's unlawful conduct. Defendant's Privacy Policy does not inform Defendant's customers that their Personal Viewing Information will be disclosed to unauthorized third parties such as Meta as described in this Complaint.

57. Plaintiff was therefore ignorant of the information essential to pursue his claims, without any fault or lack of diligence on his part.

58. Defendant has exclusive knowledge that BBC America's website incorporates the Meta Pixel, and other tracking tools, and the information those pixels and tools are configured to collect and disclose, and yet Defendant failed and continues to fail to disclose to website visitors, including Plaintiff and Class Members, that by interacting with BBC America's website their PVI would be disclosed or released to Meta and other unauthorized third parties.

59. Under the VPPA, Defendant was and continues to be under a duty to disclose the nature, significance, and consequences of its collection and treatment of its website visitors' and

customers' PVI. However, to date, Defendant has not conceded, acknowledged, or otherwise indicated to BBC America's customers and other website visitors that BBC America discloses or releases their PVI to unauthorized third parties. Accordingly, Defendant is estopped from relying on any statute of limitations.

60. Moreover, all applicable statutes of limitation have also been tolled pursuant to the discovery rule.

## CLASS ACTION ALLEGATIONS

61. Plaintiff brings this action, on behalf of himself and all others similarly situated as class members under Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure, on behalf of the following class (the "Class" or "Class Members"):

> All natural persons in the United Sates who subscribed to BBC America, and while having a Facebook account, viewed prerecorded video content on www.bbcamerica.com and had their Personal Viewing Information disclosed to Meta by Defendant during the Class Period.

62. Class Period is defined as May 2019 through to the earlier of date of trial or when Defendant removes tracking tools from its website and/or stops sharing PVI through the pixel.

63. Excluded from the Class are Defendant, its employees, agents and assigns, and any members of the judiciary to whom this case is assigned, their respective court staff, the members of their immediate families, and Plaintiff's counsel.

64. Plaintiff reserves the right to revise or amend the above Class definition based on the discovery of new information.

65. <u>Numerosity:</u> The potential members of the proposed Class, as defined and identified herein, are, on information and belief, more than one hundred thousand, and so numerous and geographically dispersed that joinder of all members of the Class is impracticable.

66. <u>Typicality:</u> Plaintiff's claims are typical of the claims of the Class. Plaintiff and members of the Class were harmed by the same wrongful conduct by Defendant in that Defendant caused their PVI to be disclosed to Meta without obtaining express written consent. Plaintiff's claims are based on the same legal theories as claims of other Class Members.

67. <u>Commonality</u>: Common questions of fact and law exist as to all Class Members and predominate over the questions affecting only individual members of the Class. With respect to the Class Members these common questions include but are not limited to:

(a) Whether Defendant had Meta Pixels embedded on its website that disclosed Class Members' PVI to Meta and/or any other unauthorized third party;

(b) Whether Defendant is engaged in the business of "rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials" and, thus, is a "video tape service provider" within the meaning of 18 U.S.C. § 2710(a)(4);

(c) Whether Class Members are "subscriber[s] of goods or services from a video tape service provider" and, thus, are "consumers" within the meaning of 18 U.S.C. § 2710(a)(1);

(d) Whether Class Members' information collected, disclosed, and shared by Defendant with unauthorized third parties, including Meta, constitutes PVI within the meaning of the Video Privacy Protection Act, 18 U.S.C. §§ 2710 *et seq.*;

(e) Whether Defendant obtained "informed, written consent" from Class Members within the meaning of 18 U.S.C. § 2710(b)(2)(b);

(f) Whether BBC America's acts and practices violated the Video Privacy Protection Act, 18 U.S.C. §§ 2710 *et seq.*;

(g) Whether the Class is entitled to liquidated penalties under 18 U.S.C. § 2710(c)(2)(A), as a result of BBC America's conduct; and

(i) Whether Plaintiff and Class Members are entitled to reasonable attorneys' fees and costs.

68. <u>Adequacy</u>: Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff's interests do not conflict with those of Class Members, he has no conflict of interest with other Class Members, is not subject to any unique defenses, and has retained competent and experienced counsel that has experience in complex consumer protection class action and cases, as well as sufficient financial and legal resources to prosecute this case on behalf of the Class. Plaintiff and his counsel have no interest that is in conflict with or otherwise antagonistic to the interests of other Class Members. Plaintiff and his counsel are committed to vigorously prosecuting this action

on behalf of the members of the Class. Plaintiff and counsel anticipate no difficulty in managing the litigation of this as a class action.

69. <u>Superiority</u>: Class action treatment is a superior method for the fair and efficient adjudication of the controversy. Such treatment will permit large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, or expense that numerous individual actions would engender. The benefits of proceeding through the class mechanism, including providing injured persons or entities a method for obtaining redress on claims that could not practicably be pursued individually, substantially outweighs potential difficulties in management of this class action. Plaintiff knows of no special difficulty to be encountered in litigating this action that would preclude its maintenance as a class action.

## CLAIM FOR RELIEF

**Violation of the Video Privacy Protection Act (VPPA), 18 U.S.C. § 2710**

70. Plaintiff re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

71. The VPPA prohibits a "video tape service provider" from knowingly disclosing "personally identifying information" concerning any "consumer" to a third party without the "informed, written consent . . . of the consumer" and the opportunity to opt out of disclosures. *See generally* 18 U.S.C. § 2710.

72. BBC America is a "video tape service provider" because it is "engaged in the business, in or affecting interstate commerce, of . . . delivery of prerecorded . . . audiovisual materials." 18 U.S.C. § 2710(a)(4).

73. Plaintiff and Class Members are "consumers" because they are subscribers to BBC America's services, each having viewed a video(s) from BBC America's library of pre-recorded videos. 18 U.S.C. § 2710(a)(1).

74. BBC America discloses "personally identifiable information" of Plaintiff and other Class Members to Meta, and, on information and belief, other unauthorized third parties, because BBC America sends "information which identifies a person as having requested or obtained specific

video materials" from BBC America, 18 U.S.C. § 2710(a)(3), specifically the title and/or identity of every video purchased alongside information that would permit an ordinary person to identify the user.

75. BBC America does not seek, let alone receive, "informed, written consent" from Plaintiff and other Class Members, 18 U.S.C. § 2710(b)(2)(B), and it consequently never provides them the opportunity to withdraw any such consent, 18 U.S.C. § 2710(b)(2)(iii).

76. BBC America knowingly provides Plaintiff's and Class Members' PVI to Meta, and, on information and belief, other unauthorized third parties. In particular, BBC America installed, embedded, and/or otherwise permitted the presence of the Meta Pixel, on its website and knew that this tracking tool would gather and disclose Plaintiff's and Class Members' personally identifying information along with the titles and/or identities of prerecorded videos viewed by them.

77. By knowingly disclosing Plaintiff's and other Class Members' personal viewing habits, BBC America violated and continues to violate Plaintiff's and other Class Members' statutorily protected right to privacy in their video-viewing habits and activities. *See* 18 U.S.C. § 2710(c).

78. As a result of the above-described violations, BBC America is liable to Plaintiff and each Class Member for actual damages related to their loss of privacy in an amount to be determined at trial but no less than "liquidated damages in an amount of $2,500." 18 U.S.C. § 2710(c)(2)(A). Under the VPPA, BBC America is also liable for reasonable attorneys' fees, litigation costs, injunctive and declaratory relief, and punitive damages in an amount to be determined by a jury and sufficient to prevent and deter the same or similar conduct by BBC America in the future.

79. Plaintiff, on behalf of himself and the Class, seeks relief as further described below.

///

///

///

**Prayer for Relief**

**WHEREFORE,** Plaintiff, individually and on behalf of the Class Members, prays for relief and judgement as follows:

80. An order determining that this action may be maintained as a class action pursuant to Fed. R. Civ. P. 23(a), (b)(2), and (b)(3) and appointing Plaintiff Cheng as the Class Representative and Plaintiff's Counsel as Class Counsel;

81. An order awarding Plaintiff and Class Members actual damages but not less than liquidated damages in an amount of $2,500 per Class Member per violation of the Video Privacy Protection Act, 18 U.S.C. § 2710(c)(2)(A);

82. An injunction forbidding Defendant from disclosing information about users' video viewing choices to third parties pursuant to 18 U.S.C. § 2710(c)(2)(D);

83. An award of reasonable attorneys' fees and costs of suit, including costs of investigation pursuant to 18 U.S.C. § 2710(c)(2)(C);

84. An award of pre- and post-judgment interest as provided by law; and

85. An award of such other and further relief, at law and in equity, as the nature of this case may require or as this Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff, on behalf of himself and all other members of the Class, hereby demands a jury trial on all issues so triable.

Respectfully submitted,

Dated: July 31, 2024

/s/ Julian Hammond
JULIAN HAMMOND, SBN# 4008397 (*pro hac vice application forthcoming*)
jhammond@hammondlawpc.com
HAMMONDLAW, P.C.
1201 Pacific Ave, Suite 600
Tacoma, WA 98402
(310) 601-6766 (Office)
(310) 295-2385 (Fax)

*Attorneys for Plaintiff and the Putative Class*