**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| YI-CHIEH CHENG, on behalf of himself and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>NEW VIDEO CHANNEL AMERICA, LLC d/b/a BBC AMERICA<br><br>Defendant. | ) | Civil Action No. 1:24-cv-05819-AS |

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANT NEW VIDEO CHANNEL AMERICA, LLC'S**
**MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**

HOLLAND & KNIGHT LLP
787 Seventh Avenue, 31st Floor
New York, New York 10019
(212) 513-3200

*Attorneys for Defendants*
*New Video Channel America LLC*
*d/b/a BBC America*

# TABLE OF CONTENTS

**Page**


I. INTRODUCTION .......... 1

II. FACTUAL BACKGROUND .......... 3

A. BBC America and Its Alleged Use of the Meta Pixel .......... 3

B. Accessing BBC America's Content .......... 3

C. Plaintiff's Indirect Interactions with BBC America .......... 5

III. LEGAL STANDARDS .......... 6

IV. LEGAL ARGUMENT .......... 8

A. Plaintiff lacks Article III Standing because he cannot allege facts to support a VPPA claim and therefore fails to establish an injury in fact. .......... 8

B. Plaintiff fails to state a claim under the VPPA because he does not allege facts establishing he is a "subscriber" of BBC America. .......... 10

V. CONCLUSION .......... 15

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....7

*Atl. Recording Corp. et al. v. Project Playlist, Inc.*,
603 F. Supp. 2d 690 (S.D.N.Y. 2009)....4, 7

*Austin-Spearman v. AMC Network Ent. LLC*,
98 F. Supp. 3d 662, 669 (S.D.N.Y. 2015) .... 11-12, 14

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 ....6

*Carter v. HealthPort Techs.*, *LLC*,
822 F.3d 47 (2d Cir. 2016)....6

*Derbaremdiker v. Applebee's Int'l, Inc.*,
No. 12-CV-01058 (KAM), 2012 WL 4482057 (E.D.N.Y. Sept. 26, 2012),
aff'd, 519 F. App'x 77 (2d Cir. 2013)....7

*DPWN Holdings (USA), Inc. v. United Air Lines, Inc.*,
747 F.3d 145 (2d Cir. 2014)....7

*Golden v. NBCUniversal Media, LLC*,
688 F.Supp.3d 150 (S.D.N.Y 2023)....11

*Holland v. JPMorgan Chase Bank, N.A.*,
No. 19 CIV. 00233 (PAE), 2019 WL 4054834 (S.D.N.Y. Aug. 28, 2019)....6, 10

*Hunthausen v. Spine Media, LLC*,
678 F. Supp. 3d 1228 (S.D. Cal. 2023).... 12-14

*Katz v. Donna Karan Co., L.L.C.*,
872 F.3d 114 (2d Cir. 2017)....6

*Krys v. Pigott*,
749 F.3d 117 (2d Cir. 2014)....7

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992)....8

*Martin v. Meredith Corp.*,
657 F. Supp. 3d 277 (S.D.N.Y. 2023)....4

*Nino v. CNBC LLC*,
Case No. 23-cv-05025, 2024 WL 3988827 (S.D.N.Y Aug. 29, 2024)....................................8

*In re Parmalat Secs. Litig.*,
375 F. Supp. 2d 278 (S.D.N.Y. 2005)....................................................................................7

*Passariello v. The Atlantic Monthly Group LLC*,
Case No. 2:22-cv-08993-JLS-AFM, Dkt. No. 34 (C.D. Cal. May 23, 2023)
(attached hereto as Exhibits C, D) ..................................................................................9, 10

*Perry v. Cable News Network, Inc.*,
854 F.3d 1336 (11th Cir. 2017) ........................................................................................ 11-14

*Poodry v. Tonawanda Band of Seneca Indians*,
85 F.3d 874 (2d Cir. 1996).......................................................................................................6

*Raines v. Byrd*,
521 U.S. 811 (1997).................................................................................................................8

*Salazar v. National Basketball Association*,
118 F.4th 533 (2nd Cir. 2024) ..........................................................................................9, 11

*Shipping Fin. Servs. Corp. v. Drakos*,
140 F.3d 129 (2d Cir. 1998)......................................................................................................6

*Sira v. Morton*,
380 F.3d 57, 67 (2d Cir. 2004)..................................................................................................7

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016)..................................................................................................................8

*Sterk v. Best Buy Stores, L.P.*,
No. 11 C 1894, 2012 WL 5197901 (N.D. Ill. Oct. 17, 2012)................................................10

*Thorne v. Formula 1 Motorsports, Inc.*,
No. 19-CV-1077 (JPO), 2019 WL 6916098 (S.D.N.Y. Dec. 19, 2019)..................................7

*Vela et al. v. AMC Networks, Inc.*,
Case No. 1:23-cv-02524-ALC (S.D.N.Y.) ...................................................................1, 2, 10

**Statutes**

18 U.S.C. § 2710(a) ..........................................................................................................8, 11

18 U.S.C. § 2710(b)(1) ..........................................................................................................10

**Other Authorities**

Federal Rules of Civil Procedure 12(b)(1)...................................................................... *passim*

Federal Rules of Civil Procedure 12(b)(6)............................................................................. *passim*

https://support.bbcamerica.com/en/support/solutions/articles/11000110073-how-can-i-watch-bbc-america-). ..........................................................................................2

https://www.bbcamerica.com/tve?redirect=/shows/the-graham-norton-show/episodes/season-32-episode-2--1070625...........................................................................4

Terms of Use, https://www.amcnetworks.com/network-terms-of-use/ (effective March 30, 2023)...................................................................................................................2

U.S. CONST. Art. III, § 2 .............................................................................................1, 8

www.bbcamerica.com.......................................................................................... *passim*

# I. **INTRODUCTION**

This effort to assert a claim based on the Video Privacy Protection Act, 18 U.S.C. § 2710 (the "VPPA" or "Act"), suffers from an incurable flaw that merits dismissal under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

To support a claim, the Act requires that there is a direct relationship between the parties; the aggrieved party must be a "consumer," which the Act defines as a "renter, purchaser, or subscriber of goods or services ***from***" the defendant. (*Id.*) (emphasis added). Yet no such relationship exists between the Plaintiff Yi-Chieh Cheng ("Plaintiff") and Defendant New Video Channel America, LLC d/b/a BBC America ("BBC America"). Indeed, Plaintiff himself concedes that he "subscribed to ***Direc[T]V*** [his cable provider] which provided him . . . [with] access to [BBC America]." First Amended Complaint ("FAC") ¶ 8 (Dkt. 15) (emphasis added). That is insufficient to make him, or his proposed class of individuals who accessed BBC America content through their cable providers "consumers" of BBC America.

Plaintiff's attempt to overcome this threshold jurisdictional hurdle through the conclusory allegation that he "subscribes to BBC America" is unavailing. As demonstrated by the accompanying Declaration of Yoshitaka Ito ("Ito Decl.") there is no connection between Plaintiff and BBC America. Plaintiff accordingly lacks standing to sue under Article III of the United States Constitution, and the FAC should be dismissed under Rule 12(b)(1).

Moreover, Plaintiff does not allege sufficient facts to demonstrate he is a "subscriber" of BBC America's goods or services. Indeed, Plaintiff's own allegations show that he is a "subscriber of goods and services from [his cable provider]," not "a subscriber of goods and services from BBC America." Because he fails to show any direct relationship with BBC America, Plaintiff fails to allege that he is a "consumer" under the VPPA, and the FAC should also be dismissed under Rule 12(b)(6).

Defendant requests that the Court take notice of the recent settlement in *Vela et al. v. AMC Networks, Inc.*, Case No. 1:23-cv-02524-ALC (S.D.N.Y.), a nationwide VPPA class action case brought against AMC Networks Inc. ("AMC"), BBC America's parent Company, in this District.

In *Vela*, the plaintiffs alleged they were "subscribers" who, in contrast to Plaintiff, had a direct relationship to AMC because they were registered users of its streaming services, including AMC+. *See Vela*, Case No. 1:23-cv-02524-ALC, Dkt. 40, attached hereto as Exhibit A. Unlike Plaintiff, the *Vela* class members had the ability to access BBC America content through their direct subscription to the AMC+ streaming service and, as such, alleged they were "consumers" within the meaning of the Act. *See* FAC ¶ 4 n. 2 (incorporating by reference https://support.bbcamerica.com/en/support/solutions/articles/11000110073-how-can-i-watch-bbc-america-).*Vela* ultimately settled on a class-wide basis and the settlement class (including all registered users of AMC+) released AMC *and its subsidiaries* (including BBC America) from, *inter alia*, "all . . . claims . . . regarding the alleged disclosure of their personally identifiable information and video viewing behavior to any third party." *Vela*, Case No. 1:23-cv-02524-ALC, Dkt. 43-1, abridged agreement attached hereto as Exhibit B. Accordingly, any such "consumers" of BBC America have already released any VPPA claims for activity regarding BBC America's online content and, to the extent they are also members of Plaintiff's narrowed proposed class, they are barred by the *Vela* settlement agreement from bringing the instant claims. *Compare* Complaint, Dkt. 8 ¶¶ 4, 17 *to* FAC (demonstrating that Plaintiff dropped allegations relating to AMC+ subscribers). *See also* FAC ¶ 64.

BBC America thus respectfully moves for the immediate dismissal of the action under Rule 12(b)(1) for lack of standing and/or Rule 12(b)(6) for failure to state a cause of action.[1]

[1] The instant motion seeks dismissal on the basis that Plaintiff is not a BBC America "consumer." If Plaintiff's FAC survives BBC America's motion to dismiss, BBC America reserves the right to assert all arguments related to whether Plaintiff and/or prospective class members consented to arbitration or agreed to a class-waiver, based on the Terms of Use applicable to all AMC services. *See* Terms of Use, https://www.amcnetworks.com/network-terms-of-use/ (effective March 30, 2023) (governing all of AMC's United States-based affiliate and subsidiary companies, including BBC America, and containing both an arbitration clause and a class action waiver).

## II. FACTUAL BACKGROUND[2]

### A. BBC America and Its Alleged Use of the Meta Pixel

BBC America is a "service" that "features many series and films" and "is a hub of innovative, culturally contagious programming." FAC ¶¶ 3, 8. Plaintiff alleges that by installing the Meta pixel on its website www.bbcamerica.com (the "Website"), BBC America violated the VPPA and caused its online users' video viewing history to be disclosed to Meta (formerly known as Facebook) without consent. *Id*. ¶¶ 5-6. Plaintiff claims that BBC America installed the Meta pixel on its Website "on or about May 2019," and that this code tracks when a user enters the Website and views video content by transmitting Meta cookies on users' browsers, including their Facebook ID ("FID") if the user is logged on to Facebook, to Meta. *Id*. ¶¶ 38-40, 43. The FAC further alleges that a FID is a unique identifier that "any ordinary person [can use] to find the user's real name, the specific and unique web browser from which the customer is sending the communications, and an encrypted combination of the information contained in . . . [Meta's] cookies [contained on a user's browser]." *Id*. ¶ 40. Therefore, he alleges that when a Facebook user (like himself) has a FID cookie on his browser and views videos on BCC America's Website, the Meta pixel on the Website causes personally identifying information, including the content name of the video(s) he watched, to be transmitted to Meta. *Id*. ¶¶ 41-45, 54.

### B. Accessing BBC America's Content

Notably absent from Plaintiff's FAC (and original complaint) are any allegations that he provided his email address, name, or other personal or identifying information to BBC America. This is because, as Plaintiff acknowledges, online users cannot subscribe directly to, nor become a registered user of, BBC America. FAC ¶¶ 8, 17-18. In other words, there is no mechanism on the BBC America website for a user to sign up or create an account to gain access to video content or any other materials. Instead, "[t]o access BBC America's service . . . individuals must sign in . . . using their respective account information with either a [third-party] cable provider or a streaming

[2] Unless otherwise indicated, all facts are drawn from the FAC and are accepted as true solely for purposes of BBC America's Rule 12(b)(6) arguments.

service [collectively "TV Provider"] to which they are already subscribed" (FAC ¶ 17), and the TV Provider offers the BBC America channel as part of its respective subscription. FAC ¶ 19.

If a user tries to access BBC America's online content without first logging in with his TV Provider he is redirected to the below website:




*See* https://www.bbcamerica.com/tve?redirect=/shows/the-graham-norton-show/episodes/season-32-episode-2--1070625.[3] Once the user selects his TV Provider, he is redirected to that provider's website and prompted to enter his login credentials:

---

[3] The BBC America Website is at the center of Plaintiff's allegations and Plaintiff describes these webpages in ¶¶ 17-19 of his FAC, so they are incorporated it by reference. *See Martin v. Meredith Corp.*, 657 F. Supp. 3d 277, 284 n. 3 (S.D.N.Y. 2023) (finding that webpages were appropriately considered on a motion to dismiss VPPA claim "because they are incorporated in and integral to the complaint"); *see also Atl. Recording Corp. et al. v. Project Playlist, Inc.*, 603 F. Supp. 2d 690, 693 n.3 (S.D.N.Y. 2009) (citation omitted) (finding that when "the contents of the website are at the center of [a plaintiff's] allegations," the website "is incorporated by reference").




*See* FAC ¶ 17. After signing in with his credentials (i.e. username and password) for his respective TV Provider, the user's TV Provider sends an "authorization key or code" (FAC ¶ 20), to confirm the user has a right to access BBC America's content because the channel is part of his TV Provider's subscription. Ito Decl. ¶¶ 7-8. These authorization codes are generated by the TV Provider and do not include any data elements that identify the online users that access BBC America content using their TV Providers. *Id.* ¶ 7. Further, BBC America does not collect or possess any customer records for any person that uses a TV provider to access BBC Content. *Id.* ¶ 9.

**C. Plaintiff's Indirect Interactions with BBC America**

Plaintiff alleges no direct relationship with BBC America, and admits he instead "<u>subscribed to Direc[T]V</u> which provided him, as part of his subscription, with access to the BBC America service." FAC ¶ 8 (emphasis added); *see also* FAC ¶ 51. Plaintiff does not (and cannot) allege that he (1) created an account with BBC America; (2) provided personal information to BBC America, such as his name, email address, or mailing address; (3) received an ID or any other identifier from BBC America; and/or (4) established a profile with BBC America in order to access its content. *See* FAC generally; *see also* FAC ¶ 4, n. 2. And although Plaintiff alleges that he paid

to watch BBC America content, he did not pay that money to BBC America and was never billed by it. Rather, he alleges that he "paid money to [DirecTV]" (FAC ¶ 76) and, "on information and belief," a "portion of [this payment was] . . . retransmitted to BBC America" by his cable provider. FAC ¶¶ 8; *see also id*. ¶¶ 22-25.

## III. LEGAL STANDARDS

BBC America moves to dismiss under Rules 12(b)(1) and 12(b)(6).

"[A] Rule 12(b)(1) motion challenging subject matter jurisdiction may be either facial or fact-based." *Katz v. Donna Karan Co., L.L.C.*, 872 F.3d 114, 119 (2d Cir. 2017) (quoting *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016)). A facial attack "challenges the sufficiency of the jurisdictional facts alleged, not the facts themselves." *Poodry v. Tonawanda Band of Seneca Indians*, 85 F.3d 874, 887 n. 15 (2d Cir. 1996). "However, a defendant may also make a fact-based Rule 12(b)(1) motion, proffering evidence beyond the plaintiffs' pleading." *Katz*, 872 F.3d at 119 (internal quotations omitted). Where, as here, a defendant makes a fact-based challenge, proffering evidence which "reveal[s] the existence of factual problems in the assertion of jurisdiction," plaintiffs must come "forward with evidence of their own to controvert that presented by the defendant." *Carter*, 822 F.3d at 57 (internal quotations and citations omitted); *see also Holland v. JPMorgan Chase Bank, N.A.*, No. 19 CIV. 00233 (PAE), 2019 WL 4054834, at *6 (S.D.N.Y. Aug. 28, 2019) ("On a factual challenge, 'jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it.'") (quoting *Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998)). "If the extrinsic evidence presented by the defendant is material and controverted, the district court will need to make findings of fact in aid of its decision as to standing." *Carter*, 822 F.3d at 57. "[T]he plaintiff has the burden of proving by a preponderance of evidence that subject matter jurisdiction exists." *Katz*, 872 F.3d at 120.

To survive a Rule 12(b)(6) motion to dismiss, a complaint must allege "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

(2007). "[D]etermining whether a complaint states a plausible claim for relief is [a] context specific [task], requiring the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 663-64 (2009). A court should generally accept well-pleaded factual allegations as true, but "that principle does not apply to general allegations that are contradicted by more specific allegations in the [c]omplaint." *DPWN Holdings (USA), Inc. v. United Air Lines, Inc.*, 747 F.3d 145, 151-52 (2d Cir. 2014) (internal quotations and citations omitted). Similarly, a court is "not bound to accept as true a legal conclusion couched as a factual allegation; nor [is it] required to accept as true allegations that are wholly conclusory." *Krys v. Pigott*, 749 F.3d 117, 128 (2d Cir. 2014) (internal quotations and citations omitted).

In deciding a Rule 12(b)(6) motion, the court may consider documents incorporated by reference. *See Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004) ("A complaint is deemed to include any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are 'integral' to the complaint.") (citations omitted). Documents are deemed incorporated where they are "quoted in the complaint." *In re Parmalat Secs. Litig.*, 375 F. Supp. 2d 278, 285 n.25 (S.D.N.Y. 2005); *see also Derbaremdiker v. Applebee's Int'l, Inc.*, No. 12-CV-01058 (KAM), 2012 WL 4482057, at *3 (E.D.N.Y. Sept. 26, 2012), aff'd, 519 F. App'x 77 (2d Cir. 2013) (screenshots of defendant's website "quoted in . . . the complaint" are deemed incorporated). Where, as here, the contents of a "website are at the center of [a plaintiffs] allegations," the website "is incorporated by reference." *Atl. Recording Corp.*, 603 F. Supp. 2d at 693 n.3 (S.D.N.Y. 2009) (citation omitted). The contents of the website are assumed to be accurately depicted, and the Court may conduct its "own review" of the website. *Id.*; *see*, *e.g.*, *Thorne v. Formula 1 Motorsports, Inc.*, No. 19-CV-1077 (JPO), 2019 WL 6916098, at *3 n.2 (S.D.N.Y. Dec. 19, 2019) (reviewing incorporated website to determine plausibility of pleadings).

## IV. LEGAL ARGUMENT

### A. Plaintiff lacks Article III Standing because he cannot allege facts to support a VPPA claim and therefore fails to establish an injury in fact.

Article III of the Constitution limits the jurisdiction of federal courts to "Cases" and "Controversies." U.S. Const. Art. III, § 2. One element of this "bedrock requirement" is that plaintiffs "must establish that they have standing to sue." *Raines v. Byrd*, 521 U.S. 811, 818 (1997) (internal quotations and citations omitted). The "irreducible constitutional minimum" of standing requires that plaintiff "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id*. at 339 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). Plaintiff cannot rely on an alleged VPPA violation to establish the requisite injury-in-fact for standing because the evidence submitted herewith in Mr. Ito's Declaration directly contradicts Plaintiff's allegation that he "subscribe[d] to BBC America." FAC ¶ 4.

The VPPA applies only to "consumer[s]," which is defined to mean "renter[s], purchaser[s], or subscriber[s] of goods or services from a video tape service provider." 18 U.S.C. § 2710(a). Plaintiff does not allege he rents or purchases content from BBC America; rather, he alleges generally that he "subscribe[d] to BBC America." FAC ¶ 4. *But see* FAC ¶ 8 ("Plaintiff subscribed <u>to Direc[T]V</u> which provided him, as part of his subscriptions, with <u>access to the BBC America</u> service.") (emphasis added). "[C]ourts throughout this District have consistently held that the plain meaning of 'subscriber' requires an 'ongoing commitment or relationship between the user and the entity which owns and operates the [website]." *Nino v. CNBC LLC*, Case No. 23-cv-05025,

2024 WL 3988827 at *3 (S.D.N.Y Aug. 29, 2024) (collecting cases). At a minimum, an alleged video tape service provider should be able to identify and "directly reach out to" its subscribers. *Salazar v. National Basketball Association*, 118 F.4th 533, 553 (2nd Cir. 2024). However, BBC America lacks the ability to contact or even identify Plaintiff, because he accessed its content through a third-party TV Provider.

Plaintiff alleges that he used his DirecTV account to view BBC America's online content. FAC ¶ 8. Therefore, he could only access Defendant's Website after logging in with his DirecTV username and password. *See* Ito Decl. ¶¶ 4-5. Moreover, because Plaintiff accessed the Website via a third-party TV Provider the only information BBC America would have received regarding Plaintiff is the authorization code sent by DirecTV to confirm that the BBC America channel was part of Plaintiff's DirecTV subscription. *See Id*. ¶¶ 6-9. The DirecTV authorization code does not contain any data elements that identify an online user that visits its Website. *See Id*. ¶ 7. And the same is true for the authorization codes provided by Xfinity, Optimum, Spectrum, and Philo, the only other TV Providers alleged in the FAC. *Id*.; *see also* FAC ¶¶ 4, 8. Thus, BBC America has no means to identify or directly contact Plaintiff or any other putative class members based on the receipt of an authorization code. Any user in Plaintiff's situation that accesses BBC America content through their TV provider is essentially anonymous to BBC America.

For these reasons, Plaintiff is not a "subscriber" who has an ongoing relationship with BBC America and cannot be considered a "consumer" under the VPPA. Therefore, the FAC does not establish the requisite injury-in-fact for standing, because Plaintiff cannot allege a VPPA violation. *See Passariello v. The Atlantic Monthly Group LLC*, Case No. 2:22-cv-08993-JLS-AFM, Dkt. No. 34 (C.D. Cal. May 23, 2023) (attached hereto as Exhibit C) (pre-answer, *sua sponte* order referencing record evidence that the plaintiff was not a subscriber to the defendant, explaining that

"[i]f Passariello is not a subscriber [to the defendant's content] the Court is doubtful that he has standing to bring this [VPPA] action," and ordering plaintiff to submit, within seven days, "[e]vidence of his subscription matching the dates alleged in the [c]omplaint"). Three days after this order was entered, the plaintiff filed a notice of voluntary dismissal. *See Passariello,* Case No. 2:22-cv-08993-JLS-AFM, Dkt No. 35, attached hereto as Exhibit D.

Based on the foregoing, Plaintiff's claim should be dismissed pursuant to Rule 12(b)(1). *See*, *e.g.*, *Sterk v. Best Buy Stores, L.P.*, No. 11 C 1894, 2012 WL 5197901, at *6 (N.D. Ill. Oct. 17, 2012) (granting 12(b)(1) motion to dismiss VPPA claim for lack of standing where defendants "produced evidence calling Plaintiff's statutory standing into question" and plaintiff did not "submit[] any competent proof that he [had] statutory standing under the VPPA"); *see also Holland*, 2019 WL 4054834, at *6-8 (granting 12(b)(1) motion to dismiss TCPA claim for lack of standing based upon factual evidence that defendant did not make any calls to the plaintiff). Because Plaintiff lacks standing to bring his claim under the VPPA against BBC America, and he is unable to cure the defects of his FAC, it should be dismissed without leave to amend.

**B. Plaintiff fails to state a claim under the VPPA because he does not allege facts demonstrating he is a "consumer" of BBC America.**

Even if Plaintiff is able to survive the standing challenge, his allegations are still insufficient to support his VPPA claim. *See* BBC America's Elements Chart, attached hereto as Exhibit E. The VPPA states that "[a] video tape service provider who knowingly discloses, to any person, [PII] concerning any consumer of such provider shall be liable to the aggrieved person." 18 U.S.C. § 2710(b)(1) (emphasis added). Here, Plaintiff fails to plausibly allege that he is a "consumer" of BBC America, and furthermore he could never be an "aggrieved person" as to BBC America and the VPPA. Thus, the FAC also fails to state a claim, and even if he could allege he is a "consumer" of BBC (he cannot), his claims would be barred by *Vela*. *See supra* Mtn. p. 1-3

The VPPA defines "consumer" to mean "any renter, purchaser, or subscriber of goods or services from a video tape service provider." 8 U.S.C. § 2710(a)(1). Of these, Plaintiff alleges only that he is a subscriber to BBC America (FAC ¶ 4) because he "paid money to [his cable provider] . . . a portion of which was retransmitted to BBC America" and viewed content on BBC America's Website. FAC ¶ 76. These allegations fail to plausibly allege that Plaintiff is a "subscriber" of BBC America's goods or services (rather than a "subscriber" of his cable provider).

The VPPA does not define "subscriber." *Golden v. NBCUniversal Media, LLC*, 688 F.Supp.3d 150, 163 (S.D.N.Y 2023) (collecting cases). However, courts in this District have determined that to "be a 'subscriber' under the VPPA requires an 'ongoing commitment or relationship between the user and the entity which owns and operates the [service]." *Id*. (citing *Perry v. Cable News Network, Inc.*, 854 F.3d 1336, 1342 (11th Cir. 2017). Or, as stated in *Austin-Spearman v. AMC Network Ent. LLC*, a "subscriber" under the VPPA, "[w]hatever the nature of the specific exchange," must have a "deliberate and durable affiliation with the [video tape service] provider." 98 F. Supp. 3d 662, 669 (S.D.N.Y. 2015). Indeed, the Second Circuit recently affirmed that "subscribers" must have a direct relationship with their "video tape service providers." *Salazar*, 118 F.4th at 552-53. In *Salazar*, the Second Circuit found that the plaintiff adequately alleged a "sufficient relationship" between himself and the NBA because in exchange for his subscription to the NBA's newsletter because, he provided the NBA with valuable personal information that, among other things, allowed the NBA to learn "how to directly reach out to [plaintiff]." *Id*. at 552 (emphasis added).

Here, at best, Plaintiff alleges an "ongoing commitment or relationship" with his cable provider, DirecTV, not BBC America. FAC ¶¶ 4, 17-18, 51. Such allegations are insufficient to establish he is a "subscriber" for purposes of the VPPA. Moreover, his attempt to create a

"subscriber" relationship based on a financial relationship between BBC America and DirecTV (FAC ¶¶ 22-23, 76) has previously been tried and rejected, as illustrated by the Eleventh Circuit's decision in *Perry*. *See Perry*, 854 F.3d at 1343; *see also Hunthausen v. Spine Media, LLC*, 678 F. Supp. 3d 1228, 1233 (S.D. Cal. 2023).

In *Perry*, the plaintiff claimed that defendant Cable News Network's ("CNN") mobile app, which he downloaded for free on his mobile device, transmitted information in violation of the VPPA. *Perry*, 854 F.3d at 1338-39. Affirming the district court, the Eleventh Circuit concluded that plaintiff was not a "subscriber" because "he ha[d] not demonstrated an ongoing commitment or relationship with CNN." *Id*. at 1342. In making its decision, the Eleventh Circuit noted that plaintiff "did not sign up for or establish an account with CNN, provide any personal information to CNN, make any payments to CNN in using its app, become a registered user of CNN or its app, receive a CNN ID, establish a CNN profile, sign up for any periodic services or transmissions, nor make any commitment or establish any relationship that would allow him to have access to exclusive or restricted content." *Id*. (cleaned up); *see also Austin-Spearman*, 98 F. Supp. 3d at 669-71 (dismissing VPPA claim on similar facts).

Notably, the plaintiff in *Perry* sought to amend his complaint by alleging "he received some exclusive or restricted content on the CNN App based on his relationship with his cable television provider and that he made payments to CNN"; however, the Eleventh Circuit held these proposed amendments "show[ed] a commitment only to his cable television provider, rather than to CNN" for two reasons. *Perry*, 854 F.3d at 1342. First, plaintiff could only access restricted content "<u>solely</u> because of his separate relationship with his cable television provider," which was "clear by the fact that plaintiff ha[d] to . . . use the credentials associated with his cable television provider's account (not a separate CNN account)" to view content. *Id*. at 1343 (emphasis in the

original). Second, plaintiff's "argument that CNN indirectly receive[d] a monetary benefit by virtue of [plaintiff's] direct payments to his cable television provider similarly misse[d] the mark" because such payments only showed a "distinct financial relationship with his cable television provider" not the online content provider. *Id.*; *see also Hunthausen*, 678 F. Supp. 3d at 1233 (dismissing plaintiff's VPPA claim and finding in part that "just because a video tape service provider indirectly receives a monetary benefit by virtue of a person's direct payment to a cable television provider does not make that person a 'consumer' under the VPPA").

Like the plaintiff in *Perry*, Plaintiff here fails to allege facts demonstrating he had an "ongoing commitment or relationship" with BBC America. There are no allegations that Plaintiff (1) created an account with BBC America; (2) provided personal information to BBC America, such as his name, email address, or mailing address; (3) made any payments *to* BBC America (4) received an ID or any other identifier from BBC America; and/or (5) established a profile with BBC America. *See* FAC generally. Instead, Plaintiff alleges that the only way users can access BBC America's Website is "either through their cable providers . . . or through streaming services" *Id.* ¶ 4; *see also id.* ¶17. And users, like Plaintiff, must use their credentials associated with their cable service provider (not a separate account with BBC America) to access online content. *See id.* ¶¶ 17-18.

In fact, Plaintiff's claim that he, and the proposed class of users, "subscribe" to BBC America rests solely on the fact that they: (1) "paid money to a cable TV or streaming service" and "on information and belief, " (*id.* ¶ 8) "a portion of [this fee] was retransmitted to BBC America" (*id.* ¶ 76; *see also* 22-23); and (2) "viewed a video(s) from BBC America's library of pre-recorded videos." *Id.* ¶ 76. Both of these allegations are insufficient to show Plaintiff has an "ongoing relationship" with BBC America. First, Plaintiff's claim that he paid "Retransmission

Fees" shows only that he had a "distinct financial relationship with his cable television provider [DirecTV]" and not BBC America. *Perry*, 854 F.3d at 1343; *see also Hunthausen*, 678 F.Supp.3d at 1233. Second, simply viewing videos on BBC America's website qualifies as "casual consumption of web content", and "without any attempt to affiliate or connect to [BBC America], exhibits none of the critical characteristics of 'subscription' and therefore does not suffice to render" Plaintiff a "subscriber" of BBC America. *Austin-Spearman*, 98 F.Supp.3d at 669.

Ultimately, Plaintiff himself appears to recognize that he is a subscriber to DirecTV, not BBC America. *See, e.g.,* FAC, ¶ 51 ("Plaintiff purchased subscriptions to Direc[T]V which included access to BBC America, in order to watch BBC America's programing.") (emphasis added); *See also id.* ¶ 8 ("Plaintiff subscribed to Direc[T]V which provided him, as part of his subscriptions, with access to the BBC America. . . . *Since he first subscribed to Direc[T]V*, Plaintiff has viewed prerecorded videos on BBC America's website") (emphases added); ¶ 17 ("To access BBC America's service, and its library of pre-recorded videos, individuals must sign in to BBC America using their respective account information with either a cable provider or a streaming service to which they are already subscribed.") (emphasis added); ¶ 18 ("Once subscribed to a cable provider or streaming service with a subscription that includes access to BBC America, users may visit www.bbcamerica.com, find their provider (e.g. DirecTV), and select from among thousands of pre-recorded videos to watch on their devices.") (emphasis added); ¶ 19 ("BBC America refers to hundreds of cable providers and streaming services offering subscriptions that include access to BBC America's services.") (emphasis added).

Because Plaintiff has failed to plausibly allege that he is a renter, purchaser, or subscriber of goods or services from BBC America, he is not a "consumer" under the VPPA and BBC America's motion to dismiss should be granted.

## V. **CONCLUSION**

For all of the above reasons, BBC America moves to dismiss this action under Rule 12(b)(1) for lack of standing and/or under Rule 12(b)(6) for failure to state a cause of action.

Dated: New York, New York
November 4, 2024

Respectfully Submitted,

HOLLAND & KNIGHT LLP

By: */s/ Mark S. Melodia*
Mark S. Melodia
Stosh M. Silivos
787 Seventh Ave 31st Floor
New York, NY 10019
Email: mark.melodia@hklaw.com
Email: stosh.silivos@hklaw.com
Tel: (212) 513-3583
Fax: (212) 358-9010

*Counsel for Defendant*