**UNITED STATES DISTRICT COURT**

**FOR THE SOUTHERN DISTRICT OF NEW YORK**

**YI-CHIEH CHENG**, *on behalf of himself and all others similarly situated,*

*Plaintiff,*

v.

**NEW VIDEO CHANNEL AMERICA, LLC d/b/a BBC America**,

*Defendant.*

**Case No. 1:24-cv-05819**

**Judge**: Hon. Arun Subramanian

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

HAMMONDLAW, P.C.
1201 Pacific Ave, Suite 600
Tacoma, WA 98402
(310) 601-6766 (Office)
(310) 295-2385 (Fax)

Attorneys for Plaintiff

## TABLE OF CONTENTS


I. INTRODUCTION ..... 1

II. SUMMARY OF ALLEGATIONS FROM PLAINTIFF'S COMPLAINT ..... 1

III. ARGUMENT ..... 3

A. PLAINTIFF HAS STANDING TO PURSUE HIS CLAIMS ..... 3

1. APPLICABLE LEGAL STANDARD ..... 3

2. PLAINTIFF'S UNCONTRADICTED PLAUSIBLE ALLEGATIONS ARE SUFFICIENT TO SHOW STANDING ..... 4

3. THE EVIDENCE PROFFERED BY DEFENDANT DOES NOT REVEAL ANY PROBLEMS IN THE ASSERTION OF JURISDICTION; IT IS IMMATERIAL TO THE ISSUE OF PLAINTIFF'S STANDING ..... 7

4. DEFENDANT'S SEEKS TO IMPROPERLY COLLAPSE THE ISSUE OF STANDING INTO THE MERITS ..... 8

B. PLAINTIFF HAS MET THE 12(B)(6) REQUIREMENTS FOR ALLEGING HIS VPPA CLAIM ..... 9

1. APPLICABLE LEGAL STANDARD ..... 9

2. PLAINTIFF ADEQUATELY ALLEGES FACTS SUFFICIENT TO ESTABLISH THAT HE IS A CONSUMER WITHIN THE MEANING OF THE VPPA ..... 9

3. THE SETTLEMENT IN VELA DOES NOT BAR PLAINTIFF'S AND THE PUTATIVE CLASS'S CLAIMS ..... 15

C. SHOULD THE COURT BE INCLINED TO GRANT DEFENDANT'S MOTION, PLAINTIFF SHOULD BE GRANTED LEAVE TO AMEND ..... 16

IV. CONCLUSION ..... 17

## TABLE OF AUTHORITIES

**Cases**

*Austin-Spearman v. AMC Network Ent. LLC*, 98 F. Supp. 3d 662 (S.D.N.Y. 2015) ............ 12, 15

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ............ 9

*Cantu v. Tapestry, Inc.*, No. 22-cv-1974, 2023 WL 4440662 (S.D. Cal. July 10, 2023) ............ 5, 8

*Carter v. HealthPort Techs., LLC*, 822 F. 3d 47 (2d Cir. 2016) ............ 3, 4

*Eichenberger v. ESPN*, 876 F.3d 979 (9th Cir. 2017) ............ 5

*Ellis v. Cartoon Network, Inc.,* 803 F. 3d 1251 (2015) ............ 10, 11, 13, 15

*Foman v. Davis*, 371 U.S. 178 (1962) ............ 17

*Golden v. NBCUniversal Media, LLC*, 688 F. Supp. 3d 150 (S.D.N.Y. 2023) ............ 9, 12, 15

*Hunthausen v. Spine Media,* 678 F.Supp.3d 1228 (S.D. Cal. 2023) ............ 13, 15

*Katz v. Donna Karen, L.L.C.*, 872 F. 3d 114 (2d Cir. 2017) ............ 3

*Lamb v. Forbes Media LLC,* No. 22-cv-06319-ALC, 2023 WL 6318033 (S.D.N.Y. 2023) ............ 6

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F. 3d 160 (2d Cir. 2015) ............ 17

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ............ 4

*Martin v. Meredith Corp.*, 657 F. Supp. 3d 277 (S.D.N.Y. 2023) ............ 4

*Nino v. CNBC LLC*, No. 23-CV-05025, 2024 WL 3988827 (S.D.N.Y. Aug. 29, 2024) ............ 6

*Passariello v. The Atlantic Monthly Group, LLC*, No. 22-cv-08993-JLS-AFM, Dkt. 34 (C.D. Cal. May 23, 2023) ............ 7

*Sacerdote v. New York U.*, 9 F. 4th 95 (2d Cir. 2021) ............ 17

*Salazar v. Natl. Basketball Assn.*, 685 F. Supp. 3d 232 (S.D.N.Y. 2023) ............ 6

*Salazar v. Natl. Basketball Assn.*, 118 F. 4th 533 (2d Cir. 2024) ............ passim

*SM Kids, LLC v. Google LLC*, 963 F. 3d 206 (2d Cir. 2020) ............ 8

*Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016) ............ 4

*TransUnion LLC v. Ramirez,* 594 U.S. 413 (2021) ............ 4

*Walsh v. McGee*, 918 F. Supp. 107 (S.D.N.Y. 1996) ............ 9

*Williston Basin Interstate Pipeline Co. v. An Exclusive Gas Storage Leasehold & Easement in the Cloverly Subterranean Geological Formation*, 524 F.3d 1090 (9th Cir. 2008) ............ 8

*Yershov v. Gannett Satellite Info. Network, Inc.*, 104 F. Supp. 3d 135 (D. Mass. May 15, 2015) 5, 10

*Yershov v. Gannett Satellite Info. Network, Inc.*, 820 F.3d 482 (1st Cir. 2016) ............ 5, 10, 11

**Statutes**

18 U.S.C. § 2710(a)(1) ............ 3, 17

18 U.S.C. § 2710(a)(3) ............ 2

18 U.S.C. § 2710(a)(4) ..... 2
18 U.S.C. § 2710(b)(1) ..... 2
18 U.S.C. §§ 2710 et seq. ..... 1
Fed. R. Civ. P. 15(a)(2) ..... 16
Fed. R. Civ. P. Rule 12(b)(1) ..... 3, 7, 8, 16
Fed. R. Civ. P. Rule 12(b)(6) ..... 9, 16, 17

## I. INTRODUCTION

The motion before the Court concerns Defendant New Video Channel America, LLC, d/b/a, BBC America's ("BBC America" or "Defendant") effort to avoid a well-pled claim based on Defendant's unlawful disclosure of its customers' identities and video-viewing habits. Defendant develops, owns, and operates the service BBC America, which provides consumers with access to pre-recorded programming and videos. Consumers subscribe to BBC America through their cable providers, such as Xfinity, Optimum, and Spectrum, or through streaming services, such as Philo. Plaintiff subscribed to a DirecTV package that included access to BBC America, Plaintiff watched pre-recorded videos on www.bbcamerica.com, and a portion of Plaintiff's subscription fees paid to DirecTV were transmitted to BBC America in payment for its rental and delivery of prerecorded videos. Unbeknownst to Plaintiff, his identity and a record of every video clip he viewed or downloaded from BBC America's website, was disclosed by Defendant to a third party, Meta Platforms, Inc. ("Meta") (formerly known as Facebook).

At the core of Defendant's motion is its erroneous argument that Plaintiff is not a consumer of Defendant within the meaning of the VPPA because there is an intermediary (DirecTV) involved. Taken to its logical conclusion, Defendant's contention would lead to the inevitable result that no-one would be liable for the disclosure of Plaintiff's Personally Identifiable Information ("PII") under the VPPA, despite the prevention of the disclosure of that type of information being the sole purpose of that statute. This cannot be the case.

Plaintiff's Complaint alleges in detail all facts necessary to establish that Defendant's conduct violated the Video Privacy Protection Act, 18 U.S.C. §§ 2710 *et seq*. Defendant seeks dismissal on the grounds that Plaintiff purportedly lacks standing and that he has failed to state a claim. Each of Defendant's arguments is without merit. The motion should be denied and Plaintiff should be permitted to attempt to vindicate his privacy rights – rights squarely addressed and protected by the VPPA –in this Court.

## II. SUMMARY OF ALLEGATIONS FROM PLAINTIFF'S COMPLAINT

The Video Privacy Protection Act ("VPPA"), 18 U.S.C. §§ 2710 *et seq.*, prohibits "[a] video tape service provider [from] knowingly disclos[ing], to any person, personally identifiable

information concerning any consumer of such provider." 18 U.S.C. § 2710(b)(1). The VPPA defines personally identifiable information ("PII") as "information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider." 18 U.S.C. § 2710(a)(3). A video tape service provider is "any person, engaged in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials." 18 U.S.C. § 2710(a)(4). *See* First Amended Complaint ("FAC"), Dkt. 15, ¶¶ 13-15.

Defendant New Video Channel America, LLC, d/b/a, BBC America ("BBC America" or "Defendant") develops, owns, and operates the service BBC America, which provides consumers with access to pre-recorded programming and videos. FAC, ¶ 3. Plaintiff and Class Members subscribe to BBC America either through their cable providers, such as Xfinity, Optimum, and Spectrum, or through streaming services, such as Philo. *Id.* ¶ 4. Once subscribed to a cable provider or streaming service with a subscription that includes access to BBC America, users may visit www.bbcamerica.com, find their provider (e.g. DirecTV), and select from among thousands of pre-recorded videos to watch on their devices. *Id.* ¶ 18. On information and belief, when a consumer finds his or her cable provider or streaming service on www.bbcamerica.com, an authorization key or code is sent by the provider or service to BBC America to authenticate their subscriber and allow him or her to view pre-recorded video content on BBC America's website. *Id.* ¶ 20. A portion of the subscription fees Plaintiff and other Class Members pay to their respective cable providers or streaming services is transmitted to BBC America in payment for its rental and delivery of prerecorded videos. *Id.* ¶ 22. Individuals are able to watch prerecorded videos on Defendant's website, and Defendant receives money for renting, selling and/or delivering those prerecorded videos. *Id.* ¶ 21. The portions of the subscription fees collected by cable providers and streaming services that are transmitted to BBC America in payment for its rental and delivery of prerecorded videos, as described above, are called "Retransmission Fees." *Id.* ¶ 23. Many content providers, including BBC America, have reconfigured their business models to take advantage of retransmission fees. *Id.* ¶ 25. In 2017, for example, BBC America collected approximately $94,000,000 from these Retransmission Fees. *Id.*

Defendant is a "video tape service provider" within the meaning of 18 U.S.C. § 2710(a)(4)

because it is engaged in the business of "rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials." FAC, ¶ 21. And, Plaintiff and other Class Members are "consumers" within the meaning of 18 U.S.C. § 2710(a)(1) because they are "renter[s], purchaser[s], or subscriber[s] of goods or services from [Defendant]." *Id.* ¶ 22.

Unbeknownst to Plaintiff, a record of each video he chose to view on BBC America's website was released or disclosed by Defendant to Meta along with Plaintiff's Facebook ID through Meta Pixels embedded by Defendant on its website. FAC, ¶¶ 4-5, 38-49, 54. Plaintiff alleges that the Facebook ID can be used by an ordinary person, and is used by Meta, to link a computer user to a Facebook account or profile. *Id*, ¶¶ 40, 44. Plaintiff further alleges that the personal information publicly listed on a Facebook account or profile includes a person's first and last name. *Id*., ¶ 44. Thus, the information disclosed by Defendant to Meta is PII within the meaning of the VPPA. And, accordingly, Plaintiff alleges Defendant violated the VPPA by disclosing Plaintiff's and putative class members' PII to Meta. *Id*., ¶¶ 73-82.

## III. ARGUMENT

### A. Plaintiff Has Standing to Pursue His Claims

#### *1. Applicable Legal Standard*

Defendant asserts that it is making a "fact-based challenge" to Plaintiff's standing to pursue his claims. Motion to Dismiss ("Mot."), Dkt. 20, at p. 6. Defendant quotes *Carter v. HealthPort Techs., LLC*, for the proposition that, in such a circumstance where a defendant has proffered evidence which "'reveal[s] the existence of factual problems in the assertion of jurisdiction,' plaintiffs must come 'forward with evidence of their own to controvert that presented by the defendant.'" Opp. at p. 6 (quoting *Carter v. HealthPort Techs., LLC*, 822 F. 3d 47, 57 (2d Cir. 2016) (internal quotations and citations omitted)). But, in both *Carter* and *Katz v. Donna Karan Co. L.L.C.*, also cited by Defendant, the Second Circuit has been clear that, in opposition to a fact-based Rule 12(b)(1) motion, proffering evidence beyond the pleading, rather than coming forward with "'evidence of their own to controvert that presented by the defendant,'" a plaintiff "**may instead** 'rely on the allegations in the[ir p]leading if the evidence proffered by the defendant is immaterial because it does not contradict plausible allegations that are themselves sufficient to show standing.'" *Katz*, 872 F. 3d 114, 119 (2d Cir. 2017)

(quoting *Carter*, 822 F. 3d, at 57) (emphasis added)). In the instant case, the evidence proffered by Defendant does not contradict Plaintiff's plausible allegations that are themselves sufficient to show standing.

2. *Plaintiff's Uncontradicted Plausible Allegations are Sufficient to Show Standing*

To establish Article III standing, a plaintiff must have suffered an injury in fact that is fairly traceable to the challenged conduct and likely to be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). A plaintiff establishes injury in fact when he has suffered an invasion of a legally protected interest that is "concrete and particularized," meaning the injury must "actually exist" and "must affect the plaintiff in a personal and individual way." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339-40 (2016). "At the pleading stage, general factual allegations of injury resulting from defendant's conduct may suffice, for on a motion to dismiss [the court must] 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'" *Lujan*, 504 U.S. at 561 (citations omitted); *see also Carter*, 822 F.3d at 56 (plaintiff's burden to demonstrate standing is commensurate with the stage of litigation).

Citing the Supreme Court decision in *TransUnion* on the issue, the Second Circuit has observed, the "core alleged harm—that [a plaintiff's] personal information was disclosed to a third party, without his consent, in violation of the VPPA—'has a 'close relationship' to a harm traditionally recognized as providing a basis for a lawsuit in American courts'; public disclosure of private facts." *Salazar v. Natl. Basketball Assn.*, 118 F. 4th 533, 537 (2d Cir. 2024) (quoting *TransUnion LLC v. Ramirez,* 594 U.S. 413, 417 (2021)). *See also, e.g., Martin v. Meredith Corp.*, 657 F. Supp. 3d 277, 282-83 (S.D.N.Y. 2023) (holding that VPPA claim alleged concrete injury sufficient to establish standing where plaintiff's video-watching activity on people.com was purportedly disclosed to Facebook, noting that *TransUnion* cited the disclosure of private information as a type of traditional harm capable of redress); *Carter v. Scripps Networks, LLC*, 670 F. Supp. 3d 90, 95-96 (S.D.N.Y. 2023) ("As noted in *TransUnion* and Judge Cote's decision in *Martin* [*v. Meredith Corp.*], disclosure of private information is a harm that courts have traditionally considered to be redressable. Therefore, at the pleading stage, defendants' alleged disclosure of plaintiffs'

personal information and viewing activities describes traditionally recognized harm. [Defendant]'s motion to dismiss on standing grounds will therefore be denied." (footnote omitted)); *Cantu v. Tapestry, Inc.*, No. 22-cv-1974, 2023 WL 4440662, at *4 (S.D. Cal. July 10, 2023) ("the concreteness requirement for Article III standing is satisfied when a consumer alleges that his data has been impermissibly disclosed in violation of the [VPPA]." (citing *Eichenberger v. ESPN*, 876 F.3d 979, 983 (9th Cir. 2017)).

In the instant case, for the purposes of the instant Motion, Defendant does not dispute that Defendant is a Video Tape Service Provider within the meaning of the VPPA, that Plaintiff watched pre-recorded videos on Defendant's website, or that Defendant disclosed Plaintiff's PII to Meta when it disclosed his personal identifiers, including his Facebook ID, along with the titles of videos that he watched. Thus, Defendant does not dispute that Plaintiff suffered harm – the disclosure of his private video-viewing information - and that Defendant caused that harm as a result of the Meta Pixels placed on its website.

Defendant disputes only whether Plaintiff is a "consumer" within the meaning of the VPPA. To be precise, Defendant's argument is that Plaintiff is not a subscriber to BBC America. Mot. pp. 8-10. In asserting that Plaintiff lacks standing because he is not a subscriber, Defendant's argument rests on the erroneous claim that "[a]t a minimum, an alleged video tape service provider should be able to identify and 'directly reach out to' its subscribers." Mot. p. 9 (quoting *Salazar*, 118 F. 4th at 553). Defendant's error stems from its misreading of the Second Circuit's opinion in *Salazar*. In *Salazar*, the Second Circuit considered whether an individual has to spend money in order to be a VPPA "subscriber." 118 F. 4th, at 550-552. The Second Circuit held: "We agree with both the Eleventh and First Circuits that someone doesn't have to spend money to be a VPPA 'subscriber.'" *Id.* at 551. It, then, described the potential form of various descriptions that "don't require monetary payment." *Id.* at 552. And, considering the facts of the case before it, noted:

> Salazar plausibly alleged that he gave the NBA valuable personal information in exchange for access to the online newsletter. *Cf. Yershov* [*v. Gannett Satellite Information Network, Inc.*, 820 F.3d 482,] 489 (reasoning that the plaintiff provided "consideration in the form of" "personal information" including his Android ID and device's GPS location). This is sufficient at the pleadings stage to satisfy the requirement that Salazar allege that he became a "subscriber of" the NBA's online newsletter.

*Salazar*, 118 F.4th at 552–53. The personal information Mr. Salazar alleged that he provided to the NBA – "at a minimum, (1) his email address, (2) his IP address, and (3) cookies associated with this device," – was valuable because:

> By receiving it, the NBA learned how to directly reach out to Salazar. It discovered where his device was. It gained access to additional information stored in any cookies on his device. These tools increased the NBA's potential to urge Salazar to visit NBA.com and watch videos on it, making the NBA's relationship with him distinct from its relationship with casual NBA.com video-watchers who had not signed up for the newsletter.

*Salazar*, 118 F.4th at 552. Thus, the fact that the NBA could "directly reach out to Salazar" was significant only because that ability had value to the NBA and made the exchange of personal information, in the absence of Defendant receiving any money, sufficient consideration to make Mr. Salazar a subscriber. The Second Circuit categorically did not hold, contrary to Defendant's suggestion, that for an individual to be a subscriber it must be that the video tape service provider can directly reach out to that individual. After all, it would make no sense for an individual who pays a monthly amount to a video tape service provider to gain access to pre-recorded videos not to constitute a subscriber within the meaning of the VPPA if he does not provide his email or mailing address or another means of direct contact.

The other cases cited by Defendant are no more supportive of its argument. In *Nino v. CNBC LLC*, the Court made the unremarkable observation that "the plain meaning of 'subscriber' requires an "ongoing commitment or relationship between the user and the entity which owns and operates the [website or] all." *Nino v. CNBC LLC*, No. 23-CV-05025, 2024 WL 3988827, at *3 (S.D.N.Y. Aug. 29, 2024) (collecting cases). But, the Court's further analysis was limited to (i) its finding that "courts throughout this District have held that a VPPA subscriber is one who 'subscribes to ... audio visual materials, not just any products or services from a video tape services provider,'" *id.* (quoting *Salazar v. Natl. Basketball Assn.*, 685 F. Supp. 3d 232, 244 (S.D.N.Y. 2023)) (other citations omitted)), and (ii) its related observation that courts facing a similar fact pattern to that before it had found that "plaintiffs who 'created an account directly on the [defendant's] website' did not qualify as subscribers where 'anyone can view videos on defendant's website without the need for a login," *id.* (quoting *Lamb v. Forbes Media LLC,* No. 22-cv-06319-ALC, 2023 WL 6318033, *13 (S.D.N.Y.

2023) (internal citation omitted)). The first of these findings, albeit irrelevant to the instant case, was subsequently rejected by the Second Circuit in *Salazar*, 118 F.4th at 550. And, the second observation is inapplicable to the instant case, where Plaintiff has alleged that he was required to log in to Defendant's website in order to view the pre-recorded videos on that website, and Defendant has not disputed this allegation. Ito Decl. ¶¶ 4-8; FAC, ¶¶ 16-20.

Finally, Defendant cites a court order in *Passariello v. The Atlantic Monthly Group, LLC*, No. 22-cv-08993-JLS-AFM, Dkt. 34 (C.D. Cal. May 23, 2023) which addressed a situation entirely unlike that in the instant case, where the plaintiff had potentially inaccurately alleged that he was a paid subscriber to the Atlantic, had refused to provide his email address registered with the alleged subscription, and had been a plaintiff in a similar class action in which he had "provided in the litigation two email addresses ostensibly associated with his subscription; one was not associated with any account, and the other was associated with a digital subscription purchased thirty minutes after [his] counsel provided [defendant] the email address – months after the complaint in the action was filed." *See* Dkt. 20-3, Ex. C to Def's Motion. Understandably, the court in *Passariello* questioned whether the plaintiff had standing given that he "relie[d] heavily on his status as a paying subscriber to form the basis of his allegations that confer standing." *Id.* at p. 3. But, that extremely unusual case offers no support for Defendant's argument, here, that Plaintiff is not a subscriber.

In short, Defendant's attempt to introduce a requirement to the VPPA that any individual, to be a subscriber, must provide information to a video tape service provider sufficient for that provider to directly contact that individual, should be rejected. Plaintiff has made allegations more than sufficient to establish that he is a subscriber to Defendant's service and, more broadly, that he has standing to pursue his claims in this Court.

### *3. The Evidence Proffered by Defendant Does Not Reveal Any Problems in the Assertion of Jurisdiction; it is Immaterial to the Issue of Plaintiff's Standing*

With respect to Defendant's 12(b)(1) argument, the evidence proffered is only the Declaration of Yoshitaka Ito (Dkt. 19). That Declaration does not contradict any of the Plaintiff's allegations. Indeed, it corroborates many of them. Defendant relies on it, with respect to its standing argument, only for its assertion that "BBC America does not collect or possess records of the identities of any

person that uses a TV provider to access its Website's content." Ito Decl., Dkt. 19, ¶ 9. However, as set out above, *see supra* Part III.A.2, Defendant is quite wrong to suggest that for Plaintiff to be a subscriber it must be that Defendant can directly reach out to him. Thus, the proffered Declaration is immaterial to the issue of Plaintiff's standing.

4. *Defendant's Seeks to Improperly Collapse the Issue of Standing into the Merits*

For the reasons set out above, Defendant's 12(b)(1) argument fails on the merits. However, rather than an attack on Plaintiff's standing to sue, Plaintiff suggests that Defendant's argument is perhaps best understood as an attack on the merits of Plaintiff's VPPA claim. The Second Circuit has explicitly "cautioned against arguments that 'would essentially collapse the standing inquiry into merits, *Baur v. Veneman*, 352 F. 3d 625, 642 (2d Cir. 2003), and attempts to 'conflate the threshold question of [the plaintiff's] standing under Article III . . . with the question of whether [he] has a valid claim on the merits,' *Lerman v. Bd. of Elections*, 232 F. 3d 135, 143 n. 9 (2d Cir. 2000)." *SM Kids, LLC v. Google LLC*, 963 F. 3d 206, 212 (2d Cir. 2020). In *Cantu v. Tapestry, Inc.*, the defendant argued, similarly to the instant case, that the plaintiff lacked Article III standing because "the information disclosed [wa]s not PII within the meaning of the VPPA, and he ha[d] not adequately alleged that he was a consumer as defined by the Act." 2023 WL 4440662, at *7 (S.D. Cal. July 10, 2023). The court in *Cantu* held that it would not "consider these arguments as part of Defendant's Rule 12(b)(1) motion because they attack the merits of Plaintiff's VPPA claim, not his standing to sue." *Id.* at 7, n.5 (citing *Williston Basin Interstate Pipeline Co. v. An Exclusive Gas Storage Leasehold & Easement in the Cloverly Subterranean Geological Formation*, 524 F.3d 1090, 1094 (9th Cir. 2008) ("As a general rule, when '[t]he question of jurisdiction and the merits of [the] action are intertwined,' dismissal for lack of subject matter jurisdiction is improper." (citation omitted) (alterations in original))). Respectfully, the Court should take the same approach here, where Defendant is effectively arguing, albeit erroneously, that Plaintiff does not fall within the protective ambit of the VPPA.

///

///

**B. Plaintiff Has Met the 12(b)(6) Requirements for Alleging His VPPA Claim**

*1. Applicable Legal Standard*

Under Fed. R. Civ. P. 12(b)(6) , the claims asserted in a Complaint withstand dismissal for failure to state a claim where plaintiffs plead "enough facts to state a claim [for] relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "In evaluating a Rule 12(b)(6) motion, 'the court must accept the material facts alleged in the complaint as true,' *Cohen v. Koenig*, 24 F. 3d 1168, 1172 (2d Cir. 1994), and must not dismiss the action 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [its] claim which would entitle [it] to relief.' *Conley v. Gibson*, 355 U.S. 41, 45 (1957)." *Walsh v. McGee*, 918 F. Supp. 107, 112 (S.D.N.Y. 1996).

*2. Plaintiff Adequately Alleges Facts Sufficient to Establish that He is a Consumer within the Meaning of the VPPA*

Defendant's primary 12(b)(6) argument is largely a reprisal of its argument on standing: Defendant argues that Plaintiff "does not allege facts demonstrating he is a 'consumer' of BBC America." Mot., p. 10.[1] To make this argument, Defendant reiterates the unremarkable proposition that to "be a 'subscriber' under the VPPA requires an 'ongoing commitment or relationship between the user and the entity which owns and operates the [service],'" Mot., p. 11 (quoting *Golden v. NBCUniversal Media, LLC*, 688 F. Supp. 3d 150, 163 (S.D.N.Y. 2023) (internal citation omitted)). Defendant then discusses *Salazar*, again, and, again fails to acknowledge that the plaintiff's direct disclosure of valuable personal information to the defendant in that case does not represent the fulfillment of a requirement for the plaintiff to be a subscriber, rather it represents one form of many possible forms of consideration that might be exchanged and might establish a "sufficient relationship" to be a subscriber. *Id.*

The Second Circuit has not provided detailed guidance as to who constitutes a "subscriber" within the meaning of the VPPA, but at least two other circuits have. In *Ellis v. Cartoon Network, Inc.*, a plaintiff alleged that he was a subscriber of a Cartoon Network free mobile app where he viewed videos on the app and Cartoon Network sent his viewing history and his mobile device

[1] To be clear, Defendant does not challenge the other elements of Plaintiff's VPPA cause of action. *See* Chart in Support of Defendant's Motion to Dismiss, Dkt. 20-5.

identification number to a third party without his consent. 803 F. 3d 1251, 1253-54 (2015). The Eleventh Circuit concluded that the plaintiff was not a 'subscriber,' reasoning that "downloading an app for free and using it to view content at no cost is not enough to make a user of the app a 'subscriber' under the VPPA." *Id.* at 1257. In reaching this decision, the Eleventh Circuit identified potential elements of relationships that could make an individual a "subscriber." 803 F. 3d 1251 (2015). Having reviewed a number of district court cases and dictionary definitions, the court held that "[p]ayment . . . is only one factor a court should consider when determining whether an individual is a 'subscriber' under the VPPA." *Id.* at 1256. The court identified a "common thread" in the definitions it had reviewed; "that 'subscription' involves some type of commitment, relationship, or association (financial or otherwise) between a person and an entity." *Id.* It further explained: "As one district court succinctly put it: 'Subscriptions involve some or [most] of the following [factors]: payment, registration, commitment, delivery, [expressed association,] and/or access to restricted content.'" *Id*,. (quoting *Yershov v. Gannett Satellite Info. Network, Inc.*, 104 F. Supp. 3d 135, 147 (D. Mass. May 15, 2015)). None of these factors, however, was described as a prerequisite; the court held only that "the free downloading of a mobile app on an Android device to watch free content, without more, does not a subscriber make." *Ellis*, 803 F.3d at 1258.

The Eleventh Circuit in *Ellis* relied heavily on the analysis in the district court opinion in *Yershov*, 104 F. Supp. 3d at 147. This district court opinion, was, however, reversed on appeal. On appeal, the First Circuit recognized the Eleventh Circuit's reliance on the district court's opinion, noted the various "factors" identified by in *Ellis*, but applied a notably broader standard. *See Yershov v. Gannett Satellite Info. Network, Inc.*, 820 F.3d 482, 488-89 (1st Cir. 2016). The court ultimately held that:

> the transaction described in the complaint—whereby Yershov used the mobile device application that Gannett provided to him, which gave Gannett the GPS location of Yershov's mobile device at the time he viewed a video, his device identifier, and the titles of the videos he viewed in return for access to Gannett's video content—plausibly pleads a case that the VPPA's prohibition on disclosure applies.

*Yershov*, 820 F.3d at 489. The court further explained:

> by installing the App on his phone, thereby establishing seamless access to an electronic version of *USA Today,* Yershov established a relationship with

> Gannett that is materially different from what would have been the case had *USA Today* simply remained one of millions of sites on the web that Yershov might have accessed through a web browser.

*Id*.

In the instant case, Plaintiff alleges that he subscribed to DirecTV and as part of the subscription he was entitled to visit BBC America's website and watch pre-recorded videos. FAC, ¶ 8, In exchange for his access to pre-recorded videos on Defendant's website, part of the subscription money Plaintiff paid to DirecTV was re-transmitted to Defendant as a direct result of Plaintiff's use of Defendant's website. *Id*. At a minimum, this establishes payment by Plaintiff, a commitment to future payments as part of his subscription, delivery of pre-recorded videos by Defendant, and access to restricted content unavailable to the general public: this would be more than sufficient to establish a subscriber relationship under *Ellis.* And, because Plaintiff's relationship with Defendant is "materially different" from a non-subscriber seeking (and inevitably failing) to access Defendant's website through a web browser, it would meet the standard applied in *Yershov*.

While the Second Circuit has not provided detailed guidance applicable to the instant on what constitutes a "consumer" within the meaning of the VPPA, in addressing the statutory definition of that term it noted, "by using expansive works like 'any' and 'or,' Congress codified a 'consumer' definition that 'bespeaks breadth.'" *Salazar,* 118 F.4th at 546 (citation omitted). Plaintiff agrees and suggests, respectfully, that this Court should resolve any ambiguities in favor of finding that Plaintiff and putative class members are covered by the protective ambit of the VPPA.

Counsel for Plaintiff is not aware of a case with the same fact pattern as the instant case. It is unusual in one respect: because Plaintiff's subscription includes Defendant's service, and Defendant receives money for Plaintiff's use of its service, but DirecTV serves as an intermediary, offering a subscription including access to Defendant's service and transmitting a part of Plaintiff's subscription payment to Defendant in return for Plaintiff's access to Defendant's service. This distinction, however, does not alter the fact that, as discussed above, the elements that courts have found important in finding a subscriber relationship are present.

Defendant suggests that there is not a sufficient connection between Plaintiff and Defendant, for Defendant to be liable under the VPPA for its disclosure of Plaintiff's PII to Meta. As detailed

below, however, in each of the cases cited by Defendant, the connection between the purported consumer and the video tape service provider was markedly less substantial than that between Plaintiff and Defendant. Indeed, they are easily distinguished.

In *Golden v. NBCUniversal Media, LLC*, the district court held that the plaintiff fell short of pleading that she was a 'subscriber':

> substantially for two reasons. First, as pled, there is no connection between the emails from Today.com for which Golden signed up and the website and mobile app through which the FAC alleges she accessed the videos at issue. Second, as pled, Golden's receipt of Today.com emails, and her use of its mobile app, did not provide her with any video viewing benefits beyond those accessible to any member of the public who had accessed the Today.com website or app.

*Golden*, 688 F. Supp. 3d at 162. The first of these reasons is no longer valid given the Second Circuit's opinion in *Salazar*. *Salazar*, 118 F.4th at 549 ("'consumer' should be understood to encompass a renter, purchaser, or subscriber of *any* of the provider's 'goods or services'—audiovisual or not."). The second of these reasons is supportive of Plaintiff's position, not Defendant's. In the instant case, Plaintiff categorically did have access to restricted content to which "member[s] of the public" did not have access.

*Austin-Spearman* is no more supportive of Defendant's position. In that case, the plaintiff alleged that she accessed a website upon which the defendant "provides information about its television programming, [and] offers video clips and episodes of many of its television shows." *Austin-Spearman v. AMC Network Ent. LLC*, 98 F. Supp. 3d 662, 663 (S.D.N.Y. 2015). Access to the website was not restricted, rather, it could be accessed "either as a guest or by using an existing online account with participating cable television providers." *Id*. Plaintiff alleged that when she accessed the website, her PII was disclosed to Facebook. *Id*. The court found that the plaintiff's "casual consumption of web content, without any attempt to affiliate with or connect to the provider," was insufficient to render the plaintiff a subscriber of the defendant. *Id.* at 669. The court clarified that "an individual must do more than simply take advantage of a provided service—even if doing so alone allows a provider to access her information—in order to have acted as a 'subscriber' of the provider." *Id.* at 671. Defendant, here, suggests that "simply viewing videos on BBC America's website qualifies

as ‘casual consumption of web content,’ and ‘without any attempt to affiliate or connect to [BBC America], exhibits none of the critical characteristics of ‘subscription.’” Mot. p 14. But this entirely ignores the fact that access to BBC America’s website is restricted and, thus, there is no prospect of “casual consumption” of the content on Defendant’s website. Moreover, Plaintiff’s subscription to DirecTV created an affiliation and connection between Plaintiff and Defendant which permitted Plaintiff to access Defendant’s restricted content.

In *Hunthausen v. Spine Media*, the California district court considered a situation where the plaintiff visited a website and “watched one or more videos,” and “purchased products advertised on the [website] by third parties from which [the defendant] receives direct or indirect compensation.” 678 F.Supp.3d 1228, 1230 (S.D. Cal. 2023). Plaintiff alleged that when he watched videos on the website, his PII was disclosed to Facebook. *Id.* Plaintiff accepted that he was not a ‘renter’ or a ‘subscriber’ under the VPPA. *Id.* at 1232. The court held that the plaintiff’s purchases from third parties did not qualify him as a ‘purchaser’ under the VPPA. *Id.* at 1232-33. In complete contrast, in the instant case, Plaintiff alleges that he is a subscriber to Defendant’s services, within the meaning of the VPPA, rather than being exclusively a subscriber of a third party. Thus, *Hunthausen*, which addressed an entirely distinguishable set of facts, offers no support to Defendant’s argument. Defendant asserts that the *Hunthausen* court found that “‘just because a video tape service provider indirectly receives a monetary benefit by virtue of a person’s direct payment to a cable television provider does not make that person a ‘consumer’ under the VPPA.’” Mot. at p. 13 (quoting *Hunthausen*, 678 F.Supp.3d at 1233). This cannot fairly be described as a ‘finding’ of *Hunthausen*. Regardless, it is not relevant to the instant case where the portion of Plaintiff’s payment received by BBC America was not some tenuous indirect monetary benefit, it was directly linked to Plaintiff’s subscription package with DirecTV, which included access to BBC America’s service, and <u>directly linked to Plaintiff’s choice to watch videos on BBC America’s website</u>.

Finally, Defendant seeks to draw inapt comparisons between the instant case and *Perry*, F.3d 1336. In *Perry*, the Eleventh Circuit, considered a similar situation to that in *Ellis*, discussed above. The plaintiff, in *Perry*, alleged that he used a television network’s free mobile application for smartphones and his viewing activity, on that app, was disclosed to a third party. 854 F.3d at 1338-

39. Following the same court's opinion in *Ellis*, the plaintiff in *Perry* sought leave to amend his complaint to allege, in part, that in addition to downloading the CNN app and viewing CNN content on his iPhone, he also subscribed to CNN's television channel through his cable package. *Id.* at 1341. The district court held, and the Eleventh Circuit affirmed, that these amendments would be futile. Critically, the Court of Appeals found, first, that: "[A] person, who has not downloaded the CNN App, but has a subscription to the same cable television provider could access the same content as Perry on his or her television." *Id.* at 1343. Thus, it was not the case that the plaintiff and defendant had a relationship through which plaintiff had access to a service which provided exclusive content and which caused the disclosure of his PII. Rather, anyone with a cable subscription that included CNN could watch the same content on their television as the plaintiff could choose to watch on the CNN App. In contrast, in the instant case, as a result of his subscription and subscription payments, Plaintiff has access to BBC America's service, which was only available to him through the BBC America website; the exact website through which his PII was disclosed. Second, the Court of Appeals found:

> Perry's argument that CNN indirectly receives a monetary benefit by virtue of Perry's direct payments to his cable television provider similarly misses the mark. Perry's distinct financial relationship with his cable television provider does not shed light on his commitment to CNN because, for instance, **if his cable television provider removed CNN from Perry's cable package, it would not affect Perry's ability to use the CNN app for free video content**.

*Id*. Again, this is entirely different to the relationship in the instant case where Plaintiff can only access the video content on BBC America's website precisely because of his DirecTV subscription package which includes access to BBC America. Without that subscription, or were that subscription to drop access to BBC America, there is no alternative means for Plaintiff to access the video content on Defendant's website. *See* Ito Decl. ¶ 4. Moreover, unlike the monetary benefit realized by CNN, the retransmission fee received by BBC America is directly linked to its "rental and delivery of prerecorded videos." FAC, ¶ 23.

In sum, Defendant is quite wrong to suggest that Plaintiff's viewing of restricted content on the BBC America website is akin to "'casual consumption of web content.'" Mot., at 14 (quoting

*Austin-Spearman*, 98 F. Supp.3d at 669). Unlike in each of *Perry*, *Ellis*, *Hunthausen*, *Golden*, and *Austin-Spearman*, Plaintiff in the instant had access to restricted content as a direct result of his decision to enter a subscription agreement that included that access. *See* Ito Decl. ¶ 4. And Defendant is also quite wrong to claim that Plaintiff only has a "'distinct financial relationship with his cable television provider.'" *Id.* (quoting *Perry*, 854 F.3d at 1343). He was part of an financial arrangement structured such that "[a] portion of the subscription fees [he paid to DirecTV was] transmitted to BBC America in payment for its rental and delivery of prerecorded videos." FAC, ¶ 22. Indeed, Defendant's attempts to suggest that BBC America only obtained an indirect monetary benefit from Plaintiff's viewing of its video content is entirely unavailing: as Plaintiff alleges, "[m]any content providers, including BBC America, have reconfigured their business models to take advantage of retransmission fees. In 2017 for example, BBC America collected approximately $94,000,000 from these Retransmission fees." FAC, ¶ 25.

Plaintiff further notes that the Court might reasonably ask, given that Plaintiff has alleged that his PII has been disclosed by Defendant – a video tape service provider, can Defendant be right that Plaintiff has no recourse under the VPPA. Can the federal statute explicitly designed to prohibit the disclosure of information regarding private video-viewing activity by video tape service providers be so easily circumvented by simply introducing an intermediary who receives and then forwards monetary payment from consumers to video tape service providers and, in turn, secures access to restricted content for those consumers from those same video tape service providers.

As a final matter, Plaintiff notes that the fact that he is a subscriber to DirecTV and that other putative class members may be subscribers to other cable providers or streaming services does not bear on whether they are also subscribers of BBC America. Defendant's argument in this regard is a red herring. There is no practical or legal reason that an individual cannot be a subscriber to two video tape service providers; there is no authority for Defendant's implied suggestion that a subscriber to DirecTV cannot also be a subscriber to BBC America under 18 U.S.C. § 2710.

*3. The Settlement in Vela Does Not Bar Plaintiff's and the Putative Class's Claims*

Defendant's suggestion that any "consumers" of BBC America "have already released any

VPPA claims for activity regarding BBC America's online content" under the *Vela* settlement simply makes no sense. *See* Mot. at pp. 1-3. At base, Defendant's argument is that Plaintiff is either a "consumer" of BBC America and, thus, his claims were released by the *Vela* settlement, or, he is not a "consumer" and, thus, he has no claims. In fact, the settlement class in *Vela* was limited to "**registered users** of AMC Services through (i) an online website or mobile app owned, controlled, and/or operated by AMC or (ii) any Streaming Service." *See* Ex. B to Mot., Dkt. 20-2, § 1.34 (emphasis added). "AMC Services" was defined to mean "the following Streaming Services (defined below) owned, controlled, and operated by AMC: AMC+, Shudder, Acorn TV, ALLBLK, SundanceNow, and HIDIVE." *Id.* at § 1.2. And "Streaming Service" was defined to mean "digital applications for AMC Services that are owned, controlled or operated by AMC, and which are accessible on various video-on-demand platforms." *Id.* at § 1.37. Defendant, itself, explicitly notes that class members in *Vela* are distinct from Plaintiff and the putative class members in the instant case because they "were registered users of [AMC's] streaming services." Mot., at p. 2. And, it is this distinction which means that Plaintiff's claims were not released by the *Vela* settlement. Indeed, Defendant acknowledges that the class proposed in Plaintiff's initial complaint was deliberately clarified in the FAC and allegations regarding AMC+ subscribers were dropped. *See* Compare Dkt. 3, ¶¶ 4, 17, 61, with Dkt. 15, ¶¶ 4, 17, 64. Thus, any overlap between the settlement class in *Vela* and Plaintiff and the putative class in the instant case was eliminated. To be clear, as Defendant admits, Plaintiff was not a registered user of AMC's streaming services. Thus, he was not part of the settlement class in *Vela* and none of his claims against BBC America were released through the settlement in that case. The existence of the *Vela* settlement is, then, immaterial to the instant case.

### C. Should the Court Be Inclined to Grant Defendant's Motion, Plaintiff Should be Granted Leave to Amend

Should this Court be inclined to grant Defendant's motion to dismiss pursuant to 12(b)(1) or 12(b)(6), Plaintiff respectfully requests that the Court permit him to amend his Complaint to address any shortcomings identified by the Court. Under Federal Rule of Civil Procedure 15(a)(2), district courts "should freely give leave [to amend] when justice so requires." A district court may deny leave to amend in the presence of "undue delay, bad faith or dilatory motive on the part of the

movant, repeated failure to cure deficiencies by amendments allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Sacerdote v. New York U.*, 9 F. 4th 95, 115 (2d Cir. 2021) (noting that standard set forth under Rule 15(a)(2) "is a 'liberal' and 'permissive' standard, and the only 'grounds on which denial of leave to amend has long been held proper' are upon a showing of 'undue delay, bad faith, dilatory motive, [or] futility.'" (quoting *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F. 3d 160, 190 (2d Cir. 2015) (internal quotation marks and citation omitted)).

In the instant case, Defendant does not allege that it will suffer any prejudice should Plaintiff be permitted to amend, nor does it allege undue delay, bad faith, a dilatory motive, or any repeated failure to cure deficiencies. Instead, Defendant suggests only that leave to amend would necessarily be futile for the same reasons that it believes its 12(b)(6) motion should be granted. Mot., p. 1. Respectfully, this is incorrect. Plaintiff would be able to adequately address any shortcomings identified by the Court, and it would be inconsistent with Rule 15(a)(2) for this Court to deny leave to amend, especially when Plaintiff has, at this juncture, filed only one amended pleading.

Plaintiff's amendments, should any be necessary, would, of course, be responsive to the Court's opinion, but, should the Court find that Plaintiff has not adequately alleged that he is a "consumer" within the meaning of the VPPA, Plaintiff would amend his pleading to allege that he is a "renter," in addition to being a "subscriber." 18 U.S.C. § 2710(a)(1). As the Second Circuit explained in *Salazar*, a renter is "someone who exchanged money for temporary access [to audiovisual material]." *Salazar,* 118 F.4th at 551–52. In the instant case, Plaintiff would allege that the transmission of a portion of his subscription payment to BBC America as a direct result of Plaintiff accessing BBC America's service, constitutes an exchange of money for temporary access to audiovisual material.

## IV. <u>CONCLUSION</u>

For the foregoing reasons, Defendant's motion should be denied in its entirety.

Respectfully submitted,

Dated: December 9, 2024

/s/ Julian Hammond
JULIAN HAMMOND (*pro hac vice*)
jhammond@hammondlawpc.com

HAMMONDLAW, P.C.
1201 Pacific Ave, Suite 600
Tacoma, WA 98402
(310) 601-6766 (Office)
(310) 295-2385 (Fax)

Attorneys for Plaintiff and the Putative Class